## State, *ex rel.* Newton *v.* Herring.

### Prohibition.

(Decided April 21, 1916.   71 South. 679.)

Elections; Registration; Time.—Qualified citizens can be lawfully registered only between Nov. 15th and Jan. 5th following, and citizens registered after that time are not lawful voters, and are not entitled to be placed upon the list as such.

APPEAL from St. Clair Circuit Court.

Heard before Hon. JAMES E. BLACKWOOD.

Prohibition by the State, on the relation of J. H. Newton, against James L. Herring, as Judge of Probate, seeking to prohibit such judge of probate from placing upon the list of qualified voters of St. Clair county, the names of certain persons who were registered after the 5th of January. From a judgment denying the writ petitioner appeals. The cause is reversed and writ granted.

JOHN W. INZER, for appellant. JAMES A. EMBRY, for appellee.

THOMAS, J.—The appellant seeks by writ of prohibition to prevent the respondent, James L. Herring, as judge of probate of St. Clair county, Ala., from placing the names of Burrell Bowlin and others, so registered, on the official list of voters for said county. The averments of the petition are admitted to be true by said judge of probate. They are, in substance, that there was no qualified registrar for said county from November 1, 1915, to February 6, 1916; that prior to November 5, 1915, the Governor appointed one Hardee Cornett as registrar for said county, for the purpose of registering the qualified voters under the act of 1915 (Acts 1915, pp. 239-248); that Cornett did not qualify, nor enter upon the discharge of the duties of the office of registrar; that there was no registrar for said county, who had the right, and on whom rested the duty, to register the voters of said county, until after January 6, 1916. The petition further alleges that after January 6, 1916, the Governor appointed R. F. Ashley as registrar of said county, who qualified as such and entered upon the discharge of the duties of the office; that he gave the prescribed notice that he would visit certain precincts of said county during the month of March, 1916, for the purpose of registering persons entitled to be registered; that he did register, at Ashville, at the courthouse, on March 1, 1916, the said Burrell Bowlin, and others, who had not theretofore been registered but who were entitled to be registered as voters of said county.

Thus is raised by the petition the right of the said R. F. Ashley to register the said Burrell Bowlin and others, after January 5, 1916, in, to-wit, the month of March, 1916; and the right of

Burrell Bowlin and others, so registered or sought to be regis-
tered, by the said R. F. Ashley, in 1916, after January 5th, con-
trary to the express provisions of the act, to be registered and
listed among the legal voters of said county.

The act of 1915, in question, made it the duty of the Governor,
the state auditor, and the commissioner of agriculture and indus-
tries, or of a majority of them, acting as a board of appointment,
to appoint a "reputable and suitable person" who should be a
qualified elector and resident of the county and who should not
hold an elective office during the time, to conduct in each county
the registration of the qualified voters therein, the term of such
registrars to be for four years and until their successors are
appointed.

By sections 3 and 31½ of the act it is provided as follows:
"Sec. 3. *Vacancies of Registrars; How Filled.*—If one or more
of the persons appointed on such board of registration shall
refuse, neglect, or be unable to qualify or serve, or if a vacancy
or vacancies occur in the membership of the registrar from any
cause, the Governor, state auditor and commissioner of agricul-
ture and industries, or a majority of them acting as a board of
appointment, shall make other appointments to fill such board."

"Sec. 31½. That in case of sickness or other disability of the
registrar, the registrar on the approval of the probate judge may
appoint a deputy registrar to act in the place of the registrar
pending his sickness or disability, provided, however, that in no
case shall more than one salary be paid."

Thus there was made in the statute ample provision for timely
appointment, to meet any failure in the office of registrar be-
cause of the refusal, neglect, or inability, of the registrar "to
qualify or serve;" and thus it was provided for the registration,
within the time prescribed, of those qualified under the act to be
registered.

Section 31 of the act reads as follows: "Sec. 31. The regis-
trar shall, each year, within two weeks after January 15, make
a copy of the list of names registered, stating the residence of
the persons registered by precincts, and where precincts have
been subdivided into districts by districts or precincts, which
copy, along with the registration lists must be returned to the
office of the probate judge of the county. The judge of probate
shall certify an alphabetical list to the secretary of state. The
probate judge shall keep both the original list filed by the regis-

trars and the alphabetical list made therefrom as records in the office of the probate judge of the county, and same shall be open to public inspection."

Section 14 of the act prescribed, among others, the following duties of the judge of probate: "Sec. 14. The judge of probate shall from the registration list heretofore and hereafter returned to his office, including those registered prior to January 1, 1903, and excluding those names stricken therefrom, as shown by the lists returned to him under section 12 above, make correct alphabetical lists of all the electors registered by precincts and by districts of precincts where precincts have been divided or subdivided, which list shall be certified by him officially to be a full and correct copy of the list of registered electors for each precinct, and where a precinct has been divided or subdivided, for each distinct of each precinct respectively, as the same appears from the returns of the registrar on file in his office. Said judge of probate shall after the first day of February, 1916, and of each year thereafter, compare such official list of registered electors with the poll tax lists which have been furnished him by the tax-collector, and shall ascertain from such comparison the names of such persons on the official lists of registered electors who have failed to pay any poll tax for which they are legally due, and by such comparison and other available information, said judge of probate shall make correct alphabetical lists of all of the qualified electors registered by precincts and of districts of precincts where precincts have been divided or subdivided, and who have paid all poll tax due. Said lists so made up shall be published by him in some newspaper with a general circulation in said county on or before the 15th day of April, 1916, and of each year thereafter, and together with said lists there shall also be published a certificate that said list constitutes the correct list of all qualified electors who will be entitled to vote in any elections held in said county from the time of said publication until the first day of May of the next succeeding year, and also a notice that any voter duly registered whose name has been inadvertently or through mistake omitted therefrom and who has paid all poll taxes due and who is legally entitled to vote shall have ten days from said publication to have his name entered upon said list of qualified voters. If within such ten days any voter shall reasonably satisfy said judge of probate by proper proof that his name should be added to such list, his name shall be added thereto. An alphabeti-

cal list by districts and precincts of those so added within said ten days shall be prepared and published by said judge of probate in some newspaper with a general circulation in said county on or before the first day of May, 1916, and of each year thereafter. The alphabetical list of voters published by said judge of probate on or before the fifteenth day of April, together with the names added and published on or before the first day of May, shall be the official list of qualified voters in said county and for the districts and precincts therein for the next ensuing year, until a new list is published, and no person whose name does not thereon appear shall be allowed to vote nor shall he be allowed to vote except in the precinct, or if the precinct has been divided into districts in the district in which his name on said list appears unless such person complies with the qualifications prescribed by law for challenged voters."

Section 15 of the act has been construed in *State ex rel. Shoemaker v. R. P. Davison, as Registrar, etc., infra*, 71 South. 678. There this court said: "We cannot doubt that the intention of the Legislature was accurately expressed in the provision that all registration shall be performed between November 15th and January 5th; and this language of its own force, forbids registration after the latter date."

We adhere to the construction given section 15 of the act in the *Shoemaker Case.*

. If therefore ample opportunity for those who were qualified to register in St. Clair county during the period from November 15, 1915, to January 5, 1916, was not afforded, it was through no fault of the statutes made and provided for such registration.

The judgment is reversed, and one is here rendered granting the relief prayed.

Reversed and rendered.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.