# THE STATE v. HALLETT.

1. An intention to change the domicil, without an actual removal, with the intention of remaining, does not cause a loss of the domicil.
2. Where one resident in Georgia, came to this State, for the purpose of settling here, and leased land and purchased materials for the erection of a foundry, and returned to Georgia for his family, and after some detention returned with his family, and has ever since resided in this State—Held, that he did not lose his domicil in Georgia, or acquire one in this State, until his actual removal to this State, with the intention of remaining.

Novel and difficult questions from the Circuit Court of Talladega.

THE defendant was indicted, found guilty, and fined, for voting in the last Presidential election, without being legally qualified to vote.

From a bill of exceptions, it appears, that the defendant was a citizen of Georgia, up to September, 1843—that about that time, being in this State, he declared his intention to settle in Talladega county, if he could procure a site for an iron foundry, from one Robert Jemison. That between the 1st and 15th of September, he leased from Jemison a place in Talladega county, for this purpose, for five years, which took effect from its date. That soon after the lease was made, he employed Jemison to get lumber, for the foundry, and left for the purpose of bringing his family to Talladega. That he was delayed from some cause, in getting back with his family, and did not reach Talladega until the 26th November, 1843 ; and on his return explained to Jemison the cause of his delay. He established his foundry, and has ever since resided in Talladega county, and on the 11th November, 1844, voted at the Presidential election. It further appeared, that on the day of the election, and before he voted, he took the advice of a lawyer, as to his right te vote, who told him that he had a right to vote.

Upon this evidence, the Court was of opinion, that he was legally guilty, as charged in the indictment, which is now certified as novel and difficult.

S. F. RICE and BOWDEN, for defendant. The *quo animo* is the real subject of inquiry. An implied residence is sufficient, if the intention is clearly made out. [1 Kent's Com. 77; 8 Cranch, 253.] When the defendant leased the foundry, if his intention was to become a resident of this State, he became so in fact, although his family were in Georgia : nor did he lose his citizenship by going to Georgia for them, because he had the *animus revertendi*. The residence of the husband, or father, is not lost by the failure or omission of the rest of the family to join him. The jury were judges, both of the law and fact.

ATTORNEY GENERAL, contra. Two things must concur, to constitute domicil, to wit: actual residence and the intention of making it the home of the party. The *animo et facto* must concur. [Story's Con. of L. 42, § 44; 3 Ves. 198; 5 id. 750; 10

The State v. Hallett.

Pick. 77; 5 id. 370; 2 B. & P. 228; 11 Mass. 423; 4 Cow. note, 516.]

A mere intention to acqnire a new domicil, without the fact of removal, avails nothing; nor is an original domicil lost, until the new one is acquired, *animo et facto.* The residence of the family, is the domicil, although the head of it may have another place of business. But in this case, it does not appear, that Hallett expected, or intended to be in Alabama, by the 11th November, 1843.

ORMOND, J.—The question presented upon the record, has always been considered one of great moment, and has given rise to much discussion, and ingenious, subtle, reasoning, both in the civil and common law. It appears, however, to be well settled, that when a domicil has been acquired, it is not lost, until a new one is actually gained, *facto et animo.* The mere intention to change the domicil, without an actual removal, with the intention of remaining, does not cause a loss of the domicil.

Here the facts were, that the defendant, being domiciled in Georgia, came to this State, with the design of settling here, and manifested his intention of making this State his permanent residence, by leasing a piece of land, procuring materials for the erection of a foundry, and going to Georgia to bring his family. These acts all mark, unequivocally, his intention to change his residence, from Georgia to this State. These facts, however, are not sufficient to cause a loss of the domicil he previously had. If, on his return to Georgia, he had died before being able to carry his purpose into effect, it can admit of no doubt, the Courts of Georgia, and not of this State, would have been entitled to distribute his estate. The same rule must have prevailed, if he had died upon the journey here, because until he had actually reached here, there would have been no change in fact, of the domicil. In one case indeed, the *intention* to remove, has the effect to change the domicil—where one, by residence, has acquired a domicil, different from that of his birth, and with intention to resume his former domicil, sets out on his return. In that case, it has been held, that the domicil, is re-acquired, from the time he manifests such intention. [The Venus, 8 Cranch, 253.] This proceeds from the fact, that the acquired domicil, was adventitious, and may therefore be thrown off at pleasure. See also, the ca-

21

ses of Jennison v. Hopgood, 10 Pick. 77 ; Bruce v. Bruce, 2 B.
and P, 228 ; and Williams v. Whiting, 11 Mass. 423.    This last
case is expressly in point, and does not vary in any essential par-
ticular from this.    There, as here, an intention was manifested to
change the residence of the party, but until it was consummated
by an actual removal, the Court held, the former domicil was not
lost.

The charge of the Court, therefore, upon the facts was strictly
correct, and its judgment must be affirmed.

GOLDTHWAITE, J., *dissenting*.—I am not disposed to
question the correctness of the principles upon which the decis-
ion of the Court is founded ; but I think they are mistakenly ap-
plied to the case before us.    The peculiar condition of all new
countries is such, that the *factum* of domicil, or residence, is es-
sentially different from what it is in an older country, or a city.
The *domus*, in the first instance, is either a tree top or a mere
hovel, and the hammer of the artizan and the axe of the wood-
man must, in most cases, precede the removal of the family of the
settler.    His duties as a citizen commence with his first prepara-
tory act of settlement, and after ten days actual residence, he
may be compelled to defend the home which he is preparing.    If
the duties of citizenship are thus imposed on him, I can see no
reason why his privileges should not date from the same period, if
they became perfect by a continuation of residence for the re-
quired time.

I think it should have been put to the jury to determine from the
evidence before them, whether the acts done by Mr. Hallett,
with relation to his foundry, were performed with the intention to
make a permanent residence amongst us, and if they so found
them, that his residence commenced with the first act, indepen-
dent of the then domicil of his family.