[Allgood v. Williams.]

# Allgood *v.* Williams.

*Petition for Revocation of Letters of Guardianship.*

1.  *Appointment of guardian; residence of minor.*—The residence of a minor, under the statute which authorizes the appointment of a guardian by the Probate Court of the county "in which such minor resides" (Code, § 2370), is his legal residence, and is determined by the domicile of the father while living; and on the death of the father, his domicile continues to be the legal residence of his minor child, though at the time living with a relative in another county.

2.  *Domicile, as affected by temporary change of abode*—A minister of the Methodist Church, who, on the death of his wife, breaks up housekeeping, sends his minor child to the house of a relative in another county, rents out his plantation, joins the conference of his church, and is sent to a station or mission in another county, does not thereby forfeit his domicile, nor acquire a new domicile in the county to which he is sent.

APPEAL from the Probate Court of Blount.
Heard before the Hon. J. W. ELLIS.
The facts are sufficiently stated in the opinion.

WATTS & SON, for appellant, cited 1 Brick. Dig. p. 610, §§ 2, 3, 4, 5; *Glover v. Glover*, 13 Ala. 367; *Harrison v. Sanders*, 20 Ala. 629; *Johnson v. Copeland*, 35 Ala. 521; *Griffin v. Wall*, 32 Ala. 149; *Merrill v. Morrisette*, 76 Ala. 433; *Metcalf v. Lowther*, 65 Ala. 312; *Kelly v. Garrett*, 67 Ala. 204; *Bragg v. The State*, 69 Ala. 204; *Murphy v. Hunt*, 75 Ala. 438; *Tallmage v. Tallmage*, 66 Ala. 199.

CLOPTON, J.—Appellant was appointed in August, 1888, by the Probate Court of Blount County, guardian of Eva Williams, a minor—about five years of age. This proceeding is an application in the name of the ward to revoke the letters of guardianship, which the court revoked, on the ground that her residence was not in Blount County, and that the court had no jurisdiction to appoint a guardian.

The statute declares: "Guardians must be appointed for minors under the age of twenty-one years, by the court of probate of the county in which such minor resides." Code, § 2370. Though the word *residence* is often used to signify a temporary abode, it is also used to signify a fixed and permanent home. Residence and domicil are not in all respects convertible terms; but when *residence* or *resides* is employed

in a statute, relating to succession, grant of administration, and of guardianship, it is generally construed to mean the legal residence, and as equivalent to domicil. Jac. Dom., § 75. The same author observes, "In fact, the great bulk of cases of domicil, reported in the American books, are cases of statutory residence. This is especially true with regard to the subject of voting, eligibility to office, taxation, jurisdiction in divorce, probate and administration, etc. With respect to these subjects, there is substantial unanimity in holding statutory residence to mean domicil." And in *Shaw v. Shaw*, 98 Mass. 158, in reference to the statutes regulating jurisdiction in divorce cases. It is said : "The words, to live and to reside, in these provisions are obviously synonymous, and both relate to the domicil of the party, or the place where he is deemed, in law, to reside, which is not always the place of one's present actual abode. To live, to reside, to dwell, to have one's home or domicil, are usually, in our statutes, equivalent and convertible terms." We construe the words, "of the county in which such minor resides," as used in the statute, relating to the appointment of guardians, to mean the county of the minor's legal residence or domicil.—*Merrill v. Morrissette*, 76 Ala. 433.

As a general thing, the domicil of an infant child is that of the father, during his life time, following it through its changes, though they may live apart.—*Metcalf v. Lowther*, 56 Ala. 312. An infant, not being *sui juris*, has no freedom of choice, and can not by his own act change his domicil; nor generally can his father, other than by changing his own. As has been said, their legal inseparability is essential to the efficiency of parental government, and to the discharge of the duties which the father owes the child, and the rendition of the service which the child owes the father. Hence, as said by Gibson, C. J., "The parent's domicil, therefore, is consequently and unavoidably the domicil of the child."—*School Directors v. James*, 2 W. & S. 568. Possibly, the abandonment of his family by the father, and the emancipation of his child, may constitute exceptions to this rule ; but, as these exceptions do not arise in the present case, we express no opinion as to them. Jac. Dom., §§ 236–237. The expression of the father of the minor to his brother, to take his child and raise her right, made three or four weeks before his death, did not constitute the residence of the brother the domicil of the minor. Therefore, the domicil of the father, at the time of his death, determines the jurisdiction of the court to appoint a guardian.

On the undisputed facts—that the father, Thomas J. Williams, resided with his family for several years prior to and

[Allgood v. Williams.]

until the death of his wife in 1887, on his own lands in Blount County—we may unquestionably affirm, that his domicil was in that county at the time of the death of his wife. It is not pretended that he ever changed his domicil to Morgan County, where his brother resided. The only question then is, did he subsequently change it to Marshall County? Whether regarded a rule or fiction of law, every person is presumed to have a domicil somewhere, and can not have more than one at the same time for the purposes of succession, grant of administration, or appointment of guardians. From this doctrine follows the further rule, that a domicil once acquired continues until a new one is substituted or acquired *facto et animo.—Caldwell v. Pollak*, 91 Ala., 353. There must be both the abandonment of the former domicil, with no present intention to return, and the establishment of another place of abode with present intention to remain permanently, or, at least, for an unlimited time; the former may be inferred from the latter.

The facts relied on to show a change of the father's domicil are, that after the death of his wife he broke up house-keeping, removed a portion of his household furniture, and carried his infant daughter, the ward, to the residence of his brother in Morgan County, and in the fall of 1887 joined the North Alabama Conference of the Methodist Episcopal Church, South. He was appointed by the ecclesiastical authorities to a mission in Marshall County, to which he went, and died during the year 1888. It is a fact of consideration, that he did not sell, but rented for that year his land in Blount County. It is not shown that he had fixed a home or taken lodging in Marshall County, and no expressions are shown indicating an intention to make his permanent home in that county. The place of his death is of little importance in determining his place of domicil. The bill of exceptions recites, "that he had acquired no other permanent home, except as the pastor of his circuit or mission." The inference from these facts is, in the absence of other evidence, that his residence in Marshall County was for a temporary purpose, and for the term of his ministerial appointment. Mere presence, or residence in a place, for a special and temporary purpose, or for a limited time, with no intention to remain after the accomplishment of such purpose, or the expiration of such time, will not fix a domicil, whether the former place of abode has or has not been abandoned. When the nature or mode of the residence is inconsistent with the existence of an intention to remain permanently, or for an unlimited time, and with no present intention of removing, it is not sufficient evidence of a change

of domicil. Jac. Dom., § 182; Amer. & Eng. Encyc. of Law, 870–875. The burden to prove a change of domicil being on petitioner, we can not affirm that the evidence in the present case is sufficient to overcome the presumption that her father's domicil continued in Blount County.

As the petition also avers that the guardian has been guilty of wasting the property of his ward and neglect of her affairs, which is a statutory ground of removal, but as to which no proof was offered, we will not dismiss the application, but remand the cause that evidence may be taken as to this charge, if deemed advisable.

Reversed and remanded.