[Black v. Pate.]

# Black *v.* Pate.

## *Contest of Election to Office of Sheriff.*

1. *Contest of election; permissible to establish two voting places in one precinct.*—The statute which provides that "the court house is the place of holding elections in the precinct in which it is situated," (Code, § 1585), is not exclusive; and under the statute which authorizes the court of county commissioners to "establish two places of voting in the same election precinct, when it is deemed necessary to the convenience of the voters therein," it is no objection to the counting of ballots cast at another place in the court house precinct than at the court house, when it is shown that such other voting place was duly established by the commissioners' court.

2. *Contest of election; qualification of railroad laborers as electors.* In the contest of an election upon the ground that votes were cast for the contestee by persons who were not qualified electors by reason of their not being residents of the precinct, where no other fact appears than that said electors, who were otherwise qualified, came into the election precinct for the purpose of working on a railroad for an indefinite period or until it should be completed, and voted at the election, and their votes were accepted by the election officers, the burden of proof is upon the contestant to show that such persons were not qualified electors; and where, in addition to these facts it appears that such voters had no dwelling elsewhere, had their families with them and considered the voting place as their homes until the work on the railroad was completed, their residence in the election precinct is sufficiently established to authorize their voting in said election.

3. *Same; same; case at bar.*—In a proceeding to contest the election to an office upon the ground that illegal votes were cast for the contestee by persons who were not residents of the voting precinct, where it is shown that said persons so referred to were railroad laborers and had been working as such under their employer, a railroad contractor on different roads from 1896 to the election contested, which was held in Aug-

[Black v. Pate.]

· gust, 1900; that they came into the county where said election was held in December, 1899, or January, 1900, and resided in the precinct where they voted for more than thirty days before the election, and there was no evidence that any of such laborers ever resided elsewhere than in the State of Alabama, such laborers are qualified electors and it is proper that their votes are counted as cast.


APPEAL from the Probate Court of Geneva.

Heard before the Hon. ED. ROACH.

The proceedings in this case were instituted in the probate court of Geneva county by the appellee, B. T. Pate, against the appellant, George W. Black, for the purpose of contesting the election of Black to the office of sheriff of Geneva county. The election was held on August 6, 1900. On August 11, 1900, the said George W. Black was declared elected to the office of sheriff of said county by the board of supervisors of election of Geneva county. The contest proceedings were commenced on August 25, 1900.

The facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

The cause was tried by the court without the intervention of a jury. Upon the hearing of all the evidence the court rendered judgment in which he declared that the contestant, B. F. Pate, was duly elected to the office of sheriff of Geneva county and was entitled to said office, and that the contestee, George W. Black, was not duly elected, and that the right and title to said office of sheriff be invested in said B. F. Pate, the contestant. From this judgment the contestee prosecutes the present appeal and assigns as error the several rulings of the trial court to which exceptions were reserved.


RAY RUSHTON, W. M. WILLIAMS, C. B. CARMICHAEL and ESPY, FARMER & ESPY, for appellant.—The laborers in this case come within the general rule as to the ac-

[Black v. Pate.]

quisition of a domicil, in that having abandoned all former homes they moved into Geneva county. intending to remain there for an indefinite time; and they had the right to vote in that they had "resided. in this State at least one year, in the county for three months, and in the precinct or ward for thirty days, next immediately preceding the election."—*Merrill v. Morrissett,* 76 Ala. 433; *Shaffer v. Gilbert,* 73 Md. 69.

Story in "Conflict of Laws," Sec. 46, writes as follows: "If a person has actually removed to another place with an intention of remaining there for an indefinite time, and as a place of fixed present domicile, it is to be deemed his place of domicile. To the same effect, see *Whitney v. Inhabitants of Sherborn,* 12 Allen, 111; Dicey on Domicil, 80; *Jemison v. Hapgood,* 10 Pick. 77. It is true that railroad men are an itinerant class, but the fact that they move from place to place in search of a livelihood does not and should not prevent them from acquiring a domicile for all purposes, civil as well as political.—*Cessna v. Meyers,* Smith El. Cases 60; McCrary on Elections, 560; *Langhammer v. Munter,* 27 L. R. A. 331; *Turner v. Crosby,* 36 Atl. Rep. 769; *Pedigo v. Grimes,* 113 Ind. 148; *Miller v. Thompson,* 1 Bart. El. Cases 118; Paine on Elections, 32; *Allentown Case,* Brightly's El. Cases 475.

W. O. MULKEY and J. J. MORRIS, *contra.*—In order to gain a residence in a particular place a man must fix his domicil there with the intention of remaining an indefinite time, and with no fixed purpose of making that a temporary abiding place only.—McCrary on Elections, § 105.

In a report made by Mr. McCrary, Chairman of Committee on Election in 41st Congress, he said: "No person is a legal voter under the constitution of Kentucky, unless he be a resident of the State, county and voting precinct." A temporary sojourner was not a resident within the legal sense of that term. A person who goes to a place for a specified purpose and with the intention

of leaving it when that purpose was accomplished, does not gain a residence, however long he may remain.

It follows that such persons as went into the precinct in question for the purpose of working on the railroad and with the intention of leaving it, when the road should be completed, had not the right to vote.

Whenever it appears that a person came into the precinct for the purpose of working on the railroad, that regarded as a temporary inhabitant, and he actually left he resided in a temporary habitation, and was generally regarded as a temporary inhabitant, and he actually left soon after the road was completed, and soon after the election, his votes should be rejected.—5 Am. & Eng. Ency. of Law (1st ed.), 276. (note); *Boger v. Teague,* 106 N. C. 622; *Nannon v. Grizzard,* 89 N. C. 115.

HARALSON, J.—This case was here on a former appeal; when a number of questions now presented were passed on.—*Black v. Pate,* 130 Ala. 514; 30 So. Rep. 434. On reversal of the judgment and the return of the case to the court below, the complaint was amended, striking out all grounds of contest except the one marked (a), in these words: "On account of illegal votes. And the said B. F. Pate avers that illegal votes were given to George W. Black [the contestee] for sheriff, which if taken from him, will reduce the number of legal votes given him, below the number of legal votes given to the said B. F. Pate, [the contestant], candidate for the same office."

Issue was taken by the contestee on this ground of contest, and he set up besides, that "at said election, illegal votes were cast and counted for contestant, B. F. Pate, which when taken from said Pate, will render the number of legal votes cast for said Pate at said election far below the number of legal votes, and counted for this respondent," etc.

It was agreed by the parties, that according to the official count made by the supervisors of the election, the contestant received for sheriff of said county, eleven hundred and twenty-nine (1129) votes, and the contestee

received eleven hundred and forty (1140), making a difference of eleven votes in favor of the contestee, and that this count was made up from the returns of the managers of the various precincts of the county.

Each party gave notice to the other of the names of the illegal votes he expected to show had been cast for the other; the contestant giving the names of 75 voters in precinct 7, of the county, who voted for contestee, and who, as claimed, were illegal voters, eleven in beat 13 and one in beat 10. The contestee gave the names of 31 voters in beat 7 which he claimed voted for contestant and were illegal.

If these 31 votes cast for contestant, and claimed by contestee to be illegal, were in fact legal votes, the vote in the entire county cast for contestant would remain as estimated on the final return, at 1129 votes, since they were included in that estimate. On the other hand, if it should appear that the votes cast in beat 7 for contestee by the Ruffin negroes, were legal votes, the vote cast for contestee would be 1140, as shown by the final return, being 11 majority for contestee; these Ruffin negro votes being included in that estimate.

The contestee by assignment of error, questions the legality of these 31 votes cast for contestant, on the ground that box 2 in precinct 10, at which said votes were cast, was an illegal voting place. But, there is no merit in this contention, as was, in effect, held on a former appeal. It appears that the polling place was regularly established by the commissioner's court, under the provisions of sections 1582-1585 of the Code.

The proof tends to show, and it is admitted by contestee's counsel that there were 45 of these votes,—alleged by the contestant to be illegal,—cast for him and counted in the returns. If these votes were legal, contestee was elected; if not, the contestant was entitled to the office.

The facts relied on by contestant, to show that these Ruffin negroes were transients in the precinct and county and not entitled to vote are, that they were employes of Thomas Ruffin, a contractor engaged in the

[Black v. Pate.]

construction of the Central of Georgia Railroad through Geneva county; that the construction of that road commenced in the winter of 1899 or spring of 1900, and these negroes came in there as laborers at that time with said Ruffin, to aid in the construction of said road; that they had never voted or been in the precinct before, and had had no homes or places of residence there or in the county before that time; that during the work on the road, they lived in tents and temporary shanties, usual with persons engaged in such work; and as soon as the road was completed, which was early after the election, they left the county and have not been seen there since. The witness, Wright, examined on part of contestee, testified that he knew most of the negroes, and had seen them at various times since 1896 to the time of the election; that some of them were with Ruffin at Mobile in 1896; afterwards at Leeds near Birmingham in 1896-7, in Butler county in 1898, and afterwards, in Henry, in 1899, doing railroad grading at these several places.

The Code, sections 1556, 1558, prescribes as qualification of voters, that they must have resided at least one year in the State, in the county for three months and in the precinct for thirty days next immediately preceding the election at which they offer to vote, and that no person shall lose or acquire a residence by temporary absence from his place of residence without the intention of remaining.

Generally, to constitute residence there must be an intention to remain. But this purpose is consistent with a purpose to remove at some future, indefinite time.— McCrary on Elec. (4th ed.), § 98. The same author in section 105, after stating the general rule, that in order to gain a residence in a particular place a man must fix his domicile there with intention of remaining an indefinite time, and with no fixed purpose of making that place a temporary abiding place, only, observes: "But there are persons whose lives are necessarily migratory, whose business is to travel from place to place. As, for example, a Methodist minister, who, by the law of his

church, cannot remain permanently and pursue his calling in any one place; or a school teacher who. resides wherever he can get employment, and removes when his business requires it; or a laborer who lives where there is an iron furnace, or a coal mine, or a railroad in process of construction, to furnish him employment and a livelihood, and when these fail him in one place, goes to another. With reference to these and other similar classes a different rule must be applied." He refers to and approves the report of the committee on elections in the House of Representatives, 42d Congress, submitted by Mr. Hoar in the case of *Cessna v. Myers*, where it is said, after elaborate discussion, the whole committee concurring: "The case of railroad laborers and contractors should be disposed of by the following rules: 1st. Where no other fact appears than that a person, otherwise qualified, came into the election district for the purpose of working on the railroad for an indefinite period, or until it should be completed, and voted at the election, it may or may not be true that his residence was in the district. His vote having been accepted by the election officers, and the burden being on the other side to show that they erred, we are not warranted in deducting the vote. 2d. Where, in addition, it appears that such voter had no dwelling house elsewhere, had his family with him, and himself considered the voting place as his home, until his work on the railroad should be over, we consider his residence in the district affirmatively established."

In *Langhammer v. Munter*, (Md.) 27 L. R. A. 331, after much consideration, the court held, under a statute similar to ours, that "there is no requirement that the proposed voter shall have some particular spot, which he calls his home, provided he makes his home (in the sense of having no other home) anywhere or in however many places, for the required times, within the limits of the State and voting district."

In the case before us, it satisfactorily appeared that the Ruffin negroes were railroad laborers, and had been working as such under one Ruffin, a railroad contractor.

on different roads, from 1896 down to the election in August, 1900; that they came into Geneva county in December, 1899, or January, 1900, and resided in beat 7 for more than thirty days before the election. There was no evidence that any of them ever resided elsewhere than in the State of Alabama. The burden of proof was on the contestant to show that they were not qualified voters. This burden he did not discharge, and under the authorities above referred to, which seem to be consonant with reason, it must be held that these laborers were qualified electors, and their votes cast for contestee were not illegal. It thus appears that he was duly elected sheriff of said county and was entitled to the certificate of election. The judgment rendered affirming the judgment of the court below will be set aside and annulled, and one here rendered in favor of the contestee.

Reversed and rendered.