# State, *ex rel.* Shoemaker *v.* Davison.

### Mandamus.

(Decided March 25, 1916.   Rehearing denied April 21, 1916.
71 South. 678.)

Elections; Registration; Time.—Under Acts 1915, p. 244; § 15, a qualified citizen must be registered as a voter between Nov. 15th and Jan. 5th following, and a registration after Jan. 5th is forbidden.

APPEAL from Montgomery Circuit Court.

Heard before Hon. W. W. PEARSON.

Mandamus by the State of Alabama on the relation of S. P. Shoemaker against R. P. Davison as County Registrar, to compel registration of a voter. From an order sustaining demurrer to petition petitioner appeals. Affirmed.

DOUGLASS & RAY, for appellant.   BECKWITH & DAVISON, for appellee.

SOMERVILLE, J.—The appellant petitioner seeks by the writ of mandamus to compel the respondent, as registrar of Montgomery county, to register petitioner as a voter of said county. It appears that petitioner applied for registration on January 15, 1916, and was able to show that he was qualified for registration. The trial court sustained a demurrer to the petition, and the only question on this appeal is whether or not a

qualified citizen may be lawfully registered under the new registration law (Acts 1915, p. 239) after January 5th.

Section 15 of this act is as follows: "The registrar in each county shall visit each precinct except the precinct in which is located the county site, at least once, and oftener if necessary, between November 15, 1915, and January 1, 1916, and each two years thereafter, and shall remain there at least one day from eight a. m. until sunset, and shall sit at the court house at the county site from January 1, 1916, to January 5, 1916, to make a complete registration of all persons entitled to register. They shall give at least twenty days' notice of the time when and the place and the precinct where they will attend to register applicants for registration by bills posted at three or more public places in each election precinct, and by advertisement once a week for three successive weeks in a newspaper, if there be one published in the county. Upon failure to give such notice, or to attend any appointment made by them in any precinct, they shall, after like notice, file new appointments therein; but the time consumed by the board in completing such registration shall not exceed forty working days in any county except that in counties having more than 50,000 population, as shown by the last preceding census, the time shall not exceed sixty days."

In prescribing the calendar time within which registration must be made, viz., between November 15th and January 5th, the language of the act is free from the slightest ambiguity. It is contended, however, that the limitation referred to is in. effect qualified by the last clause of section 15, viz.: "But the time consumed by the board in completing such registration shall not exceed forty working days in any county, except that in counties having more than 50,000 population, as shown by the last preceding census, the time shall not exceed sixty days."

The question, therefore, is whether a clear and specific limitation within a calendar period which could include, for the recent registration session, only 43 or 44 working days, is to be extended by implication beyond the calendar limitation in counties having more than 50,000 population, which includes Montgomery county, by reason of a further limitation in such counties to 60 days for the work of registration. In short, does the declaration that the work of registration shall not consume more than 60 days authorize or require the registrar to make registrations beyond the calendar date expressly fixed for the termination of his labors?

We think not. Indeed, the 40 and 60 days' limitations were evidently incorporated into the act by an adoption verbatim of the language of section 305 of the Code of 1907, under the provisions of which, without these limitations, the board of registrars could have consumed three months between July 1st and October 1st. Under the provisions of the new law, the 60 days' limitation was inapt and unnecessary, and its presence is clearly the result of carelessness or inadvertence. In the reconstruction of new systems of law out of existing statutes, such instances of verbal inaptitude are of frequent occurrence, and in the new registration act no effort seems to have been made to adjust or adapt the language of the many sections of the old law which are therein incorporated verbatim. A flagrant example of this will be found in section 24 (identical with § 314 of Code of 1907), which provides that "the action of a majority of the registrars shall be the action of the board, and a majority of the board shall constitute a quorum for the transaction of all business," although the new act substitutes a single registrar for the former board of three. Similar inaccuracies are numerous.

We cannot doubt that the intention of the Legislature was accurately expressed in the provision that all registration shall be performed between November 15th and January 5th; and this language, of its own force, forbids registration after the latter date.

It results that petitioner was not entitled to registration, and the demurrer to the petition was properly sustained.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.