5 So.2d 788

## MITCHELL v. KINNEY.

### 6 Div. 805.

Supreme Court of Alabama.

Jan. 15, 1942.

198

Beddow, Ray & Jones and Roderick Beddow, all of Birmingham, and Harris & Harris and Norman W. Harris, all of Decatur, for appellant.

F. E. St. John and F. E. St. John, Jr., both of Cullman, and Clarence Mullins and Harvey Deramus, both of Birmingham, for appellee.

Grey, 199 Ala. 152, 74 So. 62; Hodge v. Joy, 207 Ala. 198, 92 So. 171; Pate v. Pate, 236 Ala. 320, 181 So. 750.

This is a proceeding instituted by Homer F. Mitchell to contest the election of H. H. Kinney to the office of Judge of the Probate Court of Cullman County, Alabama, at the general election held on November 5, 1940, and was filed and conducted in accordance with the provisions of §§ 545, 550, 552, 559, 560 and 564 of the Code of Alabama of 1923, Code 1940, T. 17, §§ 231, 236, 238, 245, 246, 250.

Upon the trial in the circuit court, judgment was rendered by the presiding judge for the contestee and this appeal was taken by contestant under provisions of §§ 566 and 567 of the Code of Alabama of 1923, Code 1940, T. 17, §§ 252, 253.

The statement of contestant as originally filed contained many grounds, but it was later amended so that the only grounds of contest set forth were subdivision (a) of paragraph 4 and subdivisions (b), (c) and (d) of paragraph 4, as amended. The effect of these grounds was to raise the point that the contestee was not eligible to the office at the time of the election, Code 1923, § 545, subd. 2, Code 1940, T. 17, § 231. Section 545, subd. 2 of the Code of 1923 reads as follows: "When the person whose election to office is contested was not eligible thereto at the time of such election."

Contestant did not seek a judgment investing himself with the right to the office, but only sought a judgment declaring contestee ineligible, his election void, and ordering such fact certified to the appointing power. Code 1923, § 564, Code 1940, T. 17, § 250.

The contestant's theory of the case, alleged in various ways that contestee was ineligible to hold the office in question on the date of his election, for that on that date *he was not a qualified voter or elector.*

Contestant's allegations going to show that contestee was not a qualified elector were based on the holding in Shepherd v. Sartain, 185 Ala. 439, 64 So. 57, 64, to the effect that the poll tax due by a citizen of Alabama must be paid in the county in which the citizen legally resides at the time the poll tax becomes due, and that payment of it in any other county is unauthorized, and without effect. The circuit court accepted this theory of the law and followed the Shepherd Case, supra, by overruling

THOMAS, Justice.

The several assignments of error challenge the finding of facts and the judgment rendered thereon. There were several rulings by the trial court, in excluding and admitting evidence against objection by respective parties, that will be considered later.

It will be noted that a material part of the testimony was taken ore tenus before the trial judge. His findings and judgment, under the rule that obtains in this jurisdiction, will not be disturbed on appeal unless palpably wrong. Andrews v.

contestee's demurrer to the statement of contest. It was held in that case as follows:

"A poll tax must be paid in the county in which the voter legally resides at the time it became due, and payment elsewhere is unauthorized and without effect. Aside from considerations of general policy and propriety, this requirement is fairly implied by section 1769 of the Code, and section 259 of the Constitution, which gives to each county for school money all the poll taxes collected therein. This allotment should not be defeated by the payment of these taxes in foreign counties."

Contestant's contention as to the facts relative to contestee's ineligibility was that on October 1, 1930, or on October 1, 1931, or on October 1, 1932, contestee resided in and had his domicile in Jefferson County, Alabama, and being on said respective dates an inhabitant of Alabama between the ages of 21 and 45 years, he was due to have paid his poll tax for the respective tax years beginning on said respective dates in Jefferson County, and having without dispute failed to pay such poll taxes in Jefferson County, contestee was not a qualified elector.

Contestee's theory was that he acquired a domicile in Cullman County, Alabama, immediately after August 27, 1927, retained that domicile continuously until the date of his election, and, having without dispute paid in that county all poll taxes due by him, was a duly qualified elector. Contestee sought to show that he acquired a domicile in Cullman County, Alabama, in 1927, by his own acts and by testimony tending to show that his mother acquired such domicile immediately after his father's death. He relied on the principle that the domicile of a minor, whose father is dead, follows that of the mother and that he acquiesced therein, so acting as to that domicile.

We may observe here that the public policy of this state as to construction and application of the election laws has found expression in many decisions. For example, in Garrett v. Cuninghame, 211 Ala. 430, 438, 100 So. 845, 853, it was said:

" * * * Mr. Freeman, in his comprehensive note on Patton v. Watkins, supra (131 Ala. 387, 31 So. 93), reported in 90 Am.St.Rep. 43, 49, said the trend of American authority is summed up in this statement:

" ' "All the provisions of the election law are mandatory if enforcement is sought *before* election in a direct proceeding for that purpose; but *after* election all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void." Jones v. State, 153 Ind. 440, 55 N.E. 229. The same doctrine has been expressed in numerous decisions. See, especially, Taylor v. Taylor, 10 Minn. 107; Russell v. McDowell, 83 Cal. 70, 23 P. 183; Fowler v. State, 68 Tex. 30, 3 S. W. 255.' (Italics supplied.)" [Parenthesis supplied in first paragraph of quotation.]

In McCall et al. v. Automatic Voting Mach. Corp. et al., 236 Ala. 10, 15, 180 So. 695, 700, Mr. Justice Knight makes the following observation: "As well said by Justice Thomas in the case of Garrett v. Cuninghame, 211 Ala. 430, 100 So. 845, 854: 'The provisions of our Constitution (sections 179, 189, 190) and of the statute are to preserve the untrammeled expression of the choice of the elector, to the end that no qualified elector be deprived of the privilege that is accorded by law to vote, and may freely and intelligently cast his or her vote under the Constitution and statutes.' It was the safeguarding of this right that was in mind of the framers of the Constitution; and matters of detail, whether the ballot should be marked by pencil or pen, on paper, or whether the mark should be made by pulling a lever on a mechanical device was not in their thought. * * *"

In Ex parte Hartwell, 238 Ala. 62, 188 So. 891, 895, is the quotation which follows:

"From McCrary on Elections (4th Ed.), § 454, p. 333, we quote the following: 'A contested election case, whatever the form of the proceeding may be, is in its essence a proceeding in which the people—the constituency—are primarily and principally interested. It is not a suit for the adjudication and settlement of private rights simply. It follows that the parties to the record can not, by stipulation or otherwise, discontinue or compromise a case of this character without the consent and approval

of the court or tribunal trying it. Nor should such consent ever be given, unless the Court giving it is sufficiently advised to be able to say that it is for the interest of the public to do so.' Mann v. Cassidy, 1 Brewst, Pa., 11, 43; People v. Holden, 28 Cal. [123], 139.

\* \* \* \* \* \*

"The above observation has application to the contest of elections to public office, such offices being designed to serve the people justly, and by agents of their selection as prescribed in the Constitution and statutes, in the due exercise of a public privilege which the legislature has regulated in respects not prohibited by the organic law. Garrett v. Cuningham, 211 Ala. 430, 100 So. 845."

This important question was again considered in Ex parte State ex rel. Bragg, 240 Ala. 80, 84, 85, 197 So. 32, 36, where it was declared: "The selection of party nominees for public office is essentially a political function. The Legislature may safeguard primary elections for that purpose; and all persons have the legal duty, sometimes under penalty, to obey such laws. The party is or should be concerned that its nominees in a primary held at its election should be in fact the choice of the majority of legal voters. Its representatives should frown upon every species of fraud or disregard of law which tends to defeat the exercise of the elective franchise and bring Democratic processes into disrepute."

The foregoing indicates, in a general way, the necessary and incidental requirements for the election to public office as prescribed by the Constitution and the several statutes. These provisions extend from the due designation or selection of the candidate by the party or party presenting candidates and placing of their names on the ballot to be used by the electors, the due holding of all elections (primary and general elections), the due certification of the results of the election held at the place of their designation, and the declaration of the result thereof necessary to election of one qualified under the law to hold such office.

Most of the questions presented in this case are established by well considered rules in this jurisdiction.

■ Contestant having registered on December 31, 1919, in accordance with the provisions of the Act of the Legislature of 1915, then in force, and having honorably served in the Military Service of the United States between Jan. 1, 1917, and Nov. 11, 1918, was a duly qualified elector, and entitled to institute and maintain this contest. Gen.Acts of Ala. of 1915, p. 239; Davis v. Teague, 220 Ala. 309, 125 So. 51; State v. Davison, 196 Ala. 453, 71 So. 678; Amendment XIV (§ 194½), Constitution of Alabama of 1901. Witness the domicile of ministers of the gospel, of state, county and United States officials, and of those engaged in military service for state and nation as familiar examples of the difference between residence and domicile.

■ A person to be eligible to hold any public office in Alabama must be a qualified elector, *unless it is expressly otherwise* provided. Code of 1923, § 2575, subd. 1, Code 1940, T. 41, § 5, subd. 1. The provisions of law requiring a person to possess certain qualifications to be eligible to the office of judge of the probate court are stated in Skinner's Alabama Constitution Annotated, p. 610 (Constitution 1901, Article VI, Section 154) as follows: " 'The chancellors and judges of all courts of record shall have been citizens of the United States and of this state for five years next preceding their election or appointment, and shall not be less than twenty-five years of age, and, except judges of probate, shall be learned in the law.' "

■ The State of Alabama, being a government of general powers, and the Constitution not being the source of but a limitation on the power of the Legislature, section 154 of the Constitution does not prohibit the Legislature from prescribing qualifications for the office of judge of the probate court; and the statutory provision making the right to vote one of the requisites of eligibility is a valid enactment. Finklea v. Farish, 160 Ala. 230, 49 So. 366; Ex parte Bullen, 236 Ala. 56, 181 So. 498.

■ A person to be a qualified elector must have paid on or before the first day of February next preceding the election in question all poll taxes due from him from 1901 and subsequent thereto. Constitution of Alabama of 1901, § 178; Code of 1923, § 361, Code 1940, T. 17, § 12; Ex parte Bullen, supra; Frost v. State ex rel. Clements, 153 Ala. 654, 45 So. 203; Davis v. Teague, 220 Ala. 309, 125 So. 51; Finklea v. Farish, 160 Ala. 230, 49 So. 366.

Each inhabitant of the state between ages of twenty-one and forty-five years, not exempt by law is subject to an annual poll tax which becomes due and payable on the first day of October in each year. Constitution of Alabama of 1901, § 194; Code of 1923, § 520. The poll tax must be applied exclusively in aid of the public school fund in the county in which it is collected. Constitution of Alabama of 1901, § 259; Alabama School Code of 1927, § 248; Code 1940, T. 51, § 237. The poll tax must be paid in the county in which the person paying the same legally resides at the time it becomes due, and payment in any other county is unauthorized and without effect. Shepherd v. Sartain, 185 Ala. 439, 64 So. 57.

It is declared in the last cited decision and that recently decided by this court that the terms "legally resides," "inhabitant," "resident," etc., when used in connection with political rights are synonymous with domicile. Shepherd v. Sartain, supra; Allgood v. Williams, 92 Ala. 551, 8 So. 722; Ex parte Bullen, 236 Ala. 56, 60, 181 So. 498.

Domicile is defined as residence at a particular place accompanied by an intention to remain there permanently, or for an indefinite length of time. Ringgold v. Barley, 5 Md. 186, 59 Am.Dec. 107; Merrill's Heirs v. Morrissett, 76 Ala. 433; Allgood v. Williams, 92 Ala. 551, 8 So. 722; Holmes v. Holmes, 212 Ala. 597, 103 So. 884; Pope v. Howle, 227 Ala. 154, 149 So. 222; Ex parte Bullen, 236 Ala. 56, 181 So. 498; Ex parte State ex rel. Altman, 237 Ala. 642, 188 So. 685.

Domicile continues until a new one is acquired. Ex parte Bullen, supra; Talmadge's Adm'r v. Talmadge, 66 Ala. 199; State ex rel. Spence v. Judge, etc., 13 Ala. 805.

Change of domicile consists of an act and an intention, physical presence in the new domicile and the requisite intent to remain there for an indefinite length of time. The fact that a person lives at a particular place creates a prima facie presumption that such place is his domicile. The presumption is rebuttable by facts to the contrary. In re Toner, 39 Ala. 454; Hightower v. Ogletree, 114 Ala. 94, 21 So. 934; Lucky v. Roberts, 211 Ala. 578, 100 So. 878. In determining whether or not there has been a change of domicile the intention of the person whose domicile is in question is usually the controlling consideration. Ex parte State ex rel. Altman, 237 Ala. 642, 188 So. 685; Murphy v. Hunt, Miller & Co., 75 Ala. 438.

In Pope v. Howle, 227 Ala. 154, 156, 149 So. 222, 223, it is said:

"We come now to the paramount and determining question of domicile of the two classes of voters that were here denied the right of franchise. Domicile of the elector is a mixed question of law and fact, dependent upon the intention and acts of the elector. Cases illustrating such fact which may be consulted with profit are: In Holmes v. Holmes, 212 Ala. 597, 599, 103 So. 884, 886, the law of domicile is thus stated: 'A domicile once acquired is presumed to continue until a change, facto et animo, is shown. Bragg v. State, 69 Ala. 204. If there was a change, there must have been both an abandonment of his former domicile with no present intention to return, and the establishment of another place of residence with intention to remain permanently, or, at least, for an unlimited time; the former may be inferred from the latter. Allgood v. Williams, 92 Ala. 551, 8 So. 722; Caldwell v. Pollak, 91 Ala. 353, 8 So. 546; Young v. Pollak, 85 Ala. 439, 5 So. 279; Merrill's [Heirs] v. Morrissett (76 Ala. 433), supra.'

"See, also, Lucky v. Roberts, 211 Ala. 578, 100 So. 878; Talmadge's Adm'r v. Talmadge, 66 Ala. 199; Frederick v. Wilbourne, 198 Ala. 137, 73 So. 442; Black v. Pate, 136 Ala. 601, 607, 34 So. 844; Griffin v. Wall, 32 Ala. 149; Boyd v. Beck, 29 Ala. 703; State v. Hallett, 8 Ala. 159."

There is an apparent conflict of authority on the question of the admissibility of oral declarations of the party whose domicile is in question. However, it was declared in this state that such declarations are not admissible unless made as a part of the res gestae of some act which is relevant to show domicile and is in explanation of it, such as declarations of a party on leaving his home, or on arriving at a new abode, or while on a journey. 19 Corpus Juris, § 60, p. 428, 28 C.J.S., Domicile, § 17; Bradford v. Haggerthy, 11 Ala. 698; Griffin v. Wall, 32 Ala. 149; Ham v. State, 156 Ala. 645, 47 So. 126.

There are decisions to the effect that documentary evidence containing admissions by a party or a witness as to matters relevant to an issue upon the trial of a cause is entitled to more weight than oral declarations and *testimony made and given after a controversy has arisen,* and especial-

ly so when the party or witness is at the time of the trial interested in a different result.

In 20 Am.Jur. § 1179, p. 1029, among other things, it is said:

"A writing or document made contemporaneously with a transaction in which are evidenced facts pertinent to an issue, when admitted as proof of those facts, is ordinarily regarded as more reliable proof and of greater probative force than the oral testimony of a witness as to such facts based upon memory and recollection. Oral proof in such cases is regarded as less satisfactory because of the well-known fallibility of memory of witnesses.

\*   \*   \*   \*   \*

"In many cases, perhaps in most cases, the testimony which is the most acceptable in form and which carries the most weight with the jury is that of living witnesses, personally cognizant of the facts of which they speak, given under the sanction of an oath, in open court, where they may be subjected to cross-examination. Oral testimony of a witness given in open court is usually regarded as having greater probative force than a mere deposition, although there is no positive rule requiring such testimony to be given greater weight than a deposition. The surrounding circumstances may be such as to accord both classes of evidence equal value."

We are brought to a consideration of the law and the evidence touching the eligibility, or qualification for office of contestee. At the outset we declared that the provisions of Section 154 of the Constitution (subsection 1 of Section 2575 of the Code of 1923, Code 1940, T. 41, § 5, subd. 1), as to eligibility required in § 9572 of the Code of 1923, Code 1940, T. 13, § 273, are not to the effect that a judge of probate is not required to be a qualified elector as is insisted by appellee-contestee. This in effect is the analogous construction and holdings contained in Finklea v. Farish, 160 Ala. 230, 49 So. 366; State ex rel. Moore v. Blake, 225 Ala. 124, 142 So. 418; Davis v. Teague, 220 Ala. 309, 125 So. 51, though those decisions were dealing with the offices of clerk of the circuit court, sheriff and tax assessor and not the office of judge of probate. The decision in State ex rel. Montgomery v. Merrill, 218 Ala. 149, 117 So. 473, is not to the contrary. Said case construes a statute providing an additional judge for the circuit mentioned and the requirement of notice to apply to the legislature for the passage of that act.

In Scott v. Strobach, 49 Ala. 477, 487, Judge Brickell said: " \*   \*   \* The statement of contest filed in this case assails the eligibility of the appellee, on the alleged ground, that by birth he was an alien, not naturalized, and not having previous to his election declared his intention to become a citizen of the United States. If these facts exist, the ineligibility of the appellee cannot be denied. He would not be a qualified elector. He would not be entitled to any of the rights and privileges, and not subject to many of the duties of citizenship. He would be incapable of holding, or transmitting by descent, real estate. He would be entitled to nothing from the government but personal protection, so long as he yielded obedience to the general laws for the maintenance of peace and the preservation of order. It would be at war with the spirit and theory of our institutions, to recognize as eligible to any public office one who is not a qualified voter. *The right of suffrage and the capacity to hold office, unless otherwise expressly declared, must coexist.*" [Italics supplied.]

Such is the sound public policy of this state.

■ It is obvious that the several rulings on the introduction or rejection of material evidence is to be considered as it would or would not affect the judgment rendered for the contestee. The rulings on evidence now to be discussed involved questions as to the applicable principles of law. The general rule is that the admissions of a party to a suit relative to its subject-matter are admissible where they are inconsistent with the claim which he asserts in the suit whether or not it is a part of the *res gestae*. In 20 American Jurisprudence, § 544, pp. 460, 461, it is stated as follows:

"The hearsay rule excludes in general statements made out of court offered as proof of the facts asserted. The admissions of a party made directly by him, or through his agent duly authorized to speak for him, or by a privy, relative to the subject matter of a suit are received as original evidence against such party, where inconsistent with the claim which he asserts in the action, whether he is the plaintiff or the defendant. Any statement made by a party to an action which is against his own interest and which, in its nature, tends to establish or disprove any material fact, or

alleged material fact, in the case is competent to be put in evidence against him in the trial of that action. The real ground why admissions of a party to a suit may be used as proof of his opponent's case is not that the utterance is against the interest of the speaker, but that the law holds everyone responsible for what he says to the extent that his sayings may be used as evidence against himself of the truth of what he has said."

A further principle involved is, that in Alabama there are decisions to the effect that the declarations of a party where his domicile is in dispute are not admissible in evidence *unless made at such time as to be part of the res gestae of some act which is relevant to show domicile,* such as declarations of a party on leaving his home, or on a journey, or on arriving at a new abode. 19 Corpus Juris, § 60, 428, 28 C.J. S., Domicile, § 17; Bradford v. Haggerthy, 11 Ala. 698; Griffin v. Wall, 32 Ala. 149; Ham v. State, 156 Ala. 645, 658, 47 So. 126, 131.

The text of 19 Corpus Juris, § 60, p. 428 follows: "Oral declarations made by the party whose domicile is in dispute, as to the intent with which removal was accomplished, when part of the res gestae, are admissible in evidence in a contest to which he is a party. * * *" 28 C.J.S., Domicile, § 17.

The last sentence of the quoted text is the law in Alabama. We have indicated that there are cases in this jurisdiction dealing with declarations concerning domicile and it has been said that declarations are not admissible *unless part of the res gestae.* In Ham v. State, supra, the court said: "The declarations of witnesses Wise, Spurlin, Blocker, Brooks and Claud Lee as to Elba's being their home were not proper evidence to prove their residence; and the court properly sustained relator's objection to such evidence. Bradford v. Haggerthy, 11 Ala. 698; Griffin v. Wall, 32 Ala. 149."

In this case the right to try the title of respondent to the office of Mayor in an effort to oust him from office was the issue of fact to be determined and the domicile of voters was not the issue.

In Griffin v. Wall, supra, it was said: "Reputation, or common report, of either the present or former residence of any voter, is not legal evidence. Neither are declarations of a party, that he has lived in a particular place or county, evidence that such is the fact, *when the question arises in a contest between other persons.* What a party says on leaving home, or immediately previous thereto, or while on a journey, explanatory of the act or object of leaving home or performing such journey, is admissible evidence as part of the res gestæ, *whenever the act itself is material evidence.* So, as a general rule, whenever in any controversy, it is permissible *to prove any act of a third person,* the declarations of such third person, accompanying the act, and explanatory thereof, are also admissible. What degree of credit the accompanying declarations shall receive, must depend on their reasonableness and consistency." [Italics supplied.]

See the recent case of Woodward Iron Co. v. Goolsby, Adm'r, post, p. 329, 6 So. 2d 11, where the declaration by plaintiff's intestate immediately connected with the manner of his death.

Likewise, in Bradford v. Haggerthy, supra, it was observed: "Declarations or admissions of living individuals *not parties to the suit, or having such an interest in it as to render their admissions evidence, are never admitted,* that we are aware of, except in explanation of acts transacting at the time of the declaration. Greenl.Ev., §§ 123, 124. It will be seen several of the interrogatories inquire into the fact of Pou's claiming a residence as entirely distinct from any other fact, and the answers, *instead of giving his declarations explanatory of his acts, or showing they were made concurrent with the transactions or acts of which it is very possible they would be perfectly explanatory, proceed to state his declarations as a distinct matter of proof.* This we think is clearly inadmissible, on the ground that it is merely hearsay, and would let in the declarations of persons who, if themselves examined as witnesses, might give a different account of the matter to be ascertained." [Italics supplied.] See Queen v. Hepburn, 7 Cranch 290, 3 L.Ed. 348.

■ The assignment of error raises the question as to the circuit court's ruling in sustaining contestee's objection to the question propounded by contestant to W. Marvin Scott: "Q. State to the Court the substance of the conversation you had with Mr. Kinney at that time." Contestant offered to prove by the witness Scott that contestee, about the time he moved from Birmingham to Cullman in the fall of 1932, told Scott that he had been practicing law in Birmingham, and later found that he couldn't make a success of it and decided

to come to Cullman. The statement was offered by contestant as tending to show that contestee went to Birmingham with the intention of remaining there permanently. This was a controlling element on the question of contestee's domicile. Irrespective of whether or not the statement was made at a time as a part of the res gestae of contestee's coming to Cullman so as to make it admissible as such a declaration, *it was an admission against interest* and clearly admissible as establishing his domicile and intent as to this material fact. This important evidence offered in the circuit court should have been admitted.

As closely connected with the preceding question just discussed, contestant asked Mr. Scott: "Q. What did Mr. Kinney state with reference to having practiced law in Birmingham, Mr. Scott?" Mr. Scott answered: "A. He said he had been connected with the firm of Monette & Taylor, *and that life was hard down there and he couldn't see a chance to get ahead.*" The Court, of its own motion, excluded the italicized part of the answer.

■ The record shows as to the foregoing questions and the sustaining of objections and rulings thereon, that objection was raised by contestee. When the whole of the witness Scott's evidence is considered, the trial court committed no reversible error in the various rulings and if error intervened, it was error without injury.

Contestee asked his witness, Mr. Taylor: "Q. Did Mr. Bland make any statement to you, Mr. Taylor, when he brought Kinney to your office as to where Kinney was from?"

■ Contestant objected to this question because it called for hearsay testimony, and the court overruled the objection. The statement was in contestee's presence and had the force of admission from him as to his coming from Cullman. In this sense it was not a statement by a third person as to where Kinney was from and was not subject to the hearsay evidence rule. Bradford v. Haggerthy, supra; 19 Corpus Juris 427, 28 C.J.S., Domicile, § 17.

Contestee asked his witness Jeffrey: "Q. Where did Mr. Kinney tell you his mother was living?"

Over the objection of contestant, which the court overruled and to which exception was taken, the witness was allowed to answer: "Horace Kinney told me that his home was in Cullman. When Mr. Bland brought him down there he said he was a Cullman County boy. The fact is, the first time I ever introduced Kinney around the office or heard any one introduce him, that is where they said his home was—in Cullman. While Kinney was in Birmingham I came to Cullman on one or two occasions when his mother was in Cullman."

■ In this ruling of the court there was no error. The question related to what was done and said in contestee's presence. And the question as to where his mother lived was not answered. There was no motion to exclude the witness's statement while Kinney was in Birmingham that "I came to Cullman on one or two occasions when his mother was in Cullman." The answer was not responsive to the question as to where the mother lived but said "when his mother *was in* Cullman." As to this no reversible error intervened.

■ It is declared by this court that in law cases tried by a judge the introduction of illegal evidence does not require reversal when legal and material evidence is uncontradicted and supports and is sufficient to the judgment rendered. Pope v. Howle, 227 Ala. 154, 149 So. 222; Aetna Ins. Co. v. Kacharos, 226 Ala. 504, 147 So. 438, 91 A.L.R. 1432. We have indicated that the foregoing rulings of the trial court were not infected with error to reverse.

It appeared without conflict that contestee's domicile of origin was in the State of Mississippi, where his father and mother were living at the time of his birth on August 4, 1907, in Monroe County, Mississippi. Contestee's parents were married in Aberdeen, Miss., and lived there for years, and moved to Okolona, Mississippi, both places being in Monroe County. They lived in Okolona for about nine years, and contestee's father was a practicing physician at the places named. Contestee's parents lived in Okolona until their home burned and thereafter they lived in a furnished apartment. Thence they moved to Tupelo, Lee County, Mississippi, in 1927, where contestee's father purchased a hotel and clinic building and there he continued the practice of medicine. Contestee's father died in Tupelo on Aug. 27, 1927. At that time contestee was 20 years of age, a student at the University of Mississippi, and continued his education there for three years after his father's death. Contestee was graduated on June 3, 1930, went to Cullman and thence to Birmingham, Ala--

bama, on June 9, 1930, and though not admitted to practice law went to work for the firm of Monette & Taylor. He continued in such employment until the fall of 1932, at which time he moved to Cullman, Alabama, and entered into the practice of law, and remained until the date of the election in question.

It appears of record, without dispute, that contestee paid poll tax in Cullman County, Alabama, from and including the tax year beginning October 1, 1928, through and including the tax year beginning October 1, 1939.

Contestee's evidence tending to show that his mother moved to Cullman immediately after his father's death on August 27, 1927, consisted of his own testimony; that of his mother; that of his aunt and that of other persons that his mother was seen in Cullman from the date of his father's death until the fall of 1932, and frequently seen there during the illness of E. C. Kinney beginning in December, 1929, and continuing until June 9, 1930.

Contestee made no claim that either his mother or he ever maintained or acquired a separate place of abode of their own in Cullman prior to the fall of 1932; that his mother made their home with his uncle, E. C. Kinney, who was appointed administrator of the estate of contestee's father in Mississippi shortly after his death. There was a tendency of evidence that his mother lived at the home of E. C. Kinney while he worked in Birmingham. Contestee claimed that the two and a half years he spent in Birmingham were for the purpose of acquiring experience in the practice of law, and that his sojourn there was accompanied by an intention to return to his claimed domicile in Cullman. To this end he introduced evidence of several persons as to declarations made by him while in Birmingham as to Cullman being his home, and as to his purpose while in Birmingham.

To the contrary there was evidence of contestant that both contestee and his mother registered as voters in Lee County, Mississippi, in 1928, the year following the death of contestee's father. Mrs. Kinney registered there on Feb. 9, 1928, nearly six months after the death of her husband, and contestee registered there on August 20, 1928, after he became of age and about a year after his father's death.

Contestant also introduced in evidence a sworn application filed by contestee on Jan. 19, 1931, to obtain admission to the bar to practice law in the State of Alabama, in which contestee answered under oath to a specific question that: "I have resided in Alabama since June 9, 1930, and have resided in Mississippi the rest of my life. For the past three years my people have lived in Tupelo, Miss., then before that in Okolona, Mississippi." In that same application contestee gave his street address in Birmingham and in answer to a specific question said, "My mother lives with me at the above address." A similar application filed by contestee on June 16, 1931, answered the question: "State in a general way your plans for the future in the legal profession." by saying, "To prepare myself for whatever opportunity I may find open while digging away—and if possible become a member of the firm for whom I am working." He had previously answered in that application that he was working for the firm of Monette & Taylor in Birmingham, Ala.

Contestant also introduced contestee's application for registration as a voter in Cullman, Cullman County, Alabama, filed on Jan. 20, 1933, in which were the following sworn statements:

"(12) During the last five years next preceding today I have lived in the following places

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Mississippi
Alabama 2½ yrs.
(Give location in order of years)
*  *  *  *  *  *  *

"(15) I became a bona fide resident of the State of Alabama on June, 1930,

"(16) I became a bona fide resident of Cullman County, (Month, day and year) Alabama, on Oct.—— 1932."

Of similar import was the application of contestee's mother for registration in Cullman County, Alabama, filed on January 30, 1932, in which she stated:

"(12) During the last five years next preceding today I have lived in the following places In Cullman Co. since November, 1932, Prior to that time in Jefferson County, 2 years—and Aberdeen, Mississippi

"(15) I became a bona fide resident of the State of Alabama on November —— 1931

"(16) I became a bona fide resident of Cullman· County, Alabama on November —— 1932."

In a bill of complaint filed by contestee through attorneys against his uncle, E. C. Kinney, in the Chancery Court of Lee County, Mississippi, on June 15, 1931, contestee alleged and made affidavit before a notary public in Jefferson County, Alabama, dated June 6, 1931, that he was residing in Birmingham, Alabama.

In a similar bill of complaint filed by contestee's mother, through her attorneys, against E. C. Kinney in the same court and on the same date, it was alleged under oath by Mrs. Kinney that she was a resident in Birmingham, Alabama, on the date her bill was filed.

In addition to the foregoing documentary evidence contestant made proof of two petitions filed by contestee's mother in the Chancery Court of Lee County, Mississippi, in connection with the administration of Dr. Kinney's estate, in each of which she alleged under oath that she was a resident citizen of that state and county. Both of these petitions were sworn to subsequent to the date on which it was claimed that Mrs. Kinney acquired a domicile in Cullman.

The evidence showed the physical presence of Mrs. Kinney in Tupelo, Miss., on various occasions between the date of her husband's death and the date contestee moved to Birmingham, and also showed her presence thereafter in Birmingham. The foregoing present tendencies of evidence in this case.

■ It was established in Pope v. Howle, 227 Ala. 154, 149 So. 222, that long years of absence and written statements of certain voters that their residence had been at other places or other states was not conclusive, and in that case not sufficient to overturn their claim to domicile and the right to vote. To the same effect are statements contained in Shepherd v. Sartain, 185 Ala. 439, 64 So. 57; Black v. Pate, 130 Ala. 514, 30 So. 434.

■ In determining the weight of such testimony, in Warren Mitchell v. United States, 21 Wall. 350, 22 L.Ed. 584, it was observed that the mere absence from a fixed home, though long continued, without other evidence of abandonment, will not work a change of domicile. Ex parte Bullen, 236 Ala. 56, 181 So. 498; Ex parte State ex rel. Altman, 237 Ala. 642, 188 So. 685. In this connection it must be borne in mind that the burden of proving a change of domicile is rested upon him who asserts such a change. Caldwell v. Pollak, 91 Ala. 353, 357, 8 So. 546.

We have indicated the effect of Bradford v. Haggerthy, 11 Ala. 698; Griffin v. Wall, 32 Ala. 149; Ham v. State, 156 Ala. 645, 47 So. 126, are urged as presenting an apparent conflict of authority. However, when it is noted that in these cases the material declarations were made by parties who were not *"parties to the contest"* or the question arose in a contest *"between other persons,"* there is no conflict.

■ In Merrill's Heirs v. Morrissett, 76 Ala. 433, it was held that such declarations on the part of the party in interest are admissible to illustrate intention. In that case it is aptly observed:

"* * * There can be no change of domicil without a concurrence of both act and intent, and the question of intent may be solved by reference to both conduct and declarations.—Lyman v. Fiske, supra ([17 Pick., Mass., 231] 28 Am.Dec. 293); Frost v. Brisbin [19 Wend., N.Y., 11], 32 Am. Dec. [423], 427–429. And a domicil of origin, when once ascertained, must always be considered as retained until another is acquired. Talmadge's Adm'r v. Talmadge, 66 Ala. 199; State v. Hallett, 8 Ala. 159. [Parenthesis supplied.]

"Every person is presumed, moreover, to have a domicil somewhere; and although he may, in some instances, have a domicil in one place, and a residence in another, or, as is sometimes said, two residences for the purposes of business; yet he can not have more than one domicil at the same time, for the purpose of succession.—Gilman v. Gilman, 52 Me. 165, (83 Am.Dec. 502); 2 Williams on Ex'rs (Perkins' Ed.) § 1630; 2 Kent Com. (12th Ed.), 431, note (c); Ringgold v. Barley (5 Md. 186), 59 Am. Dec. 111, note. * * *"

Such was the holding in Jacobi v. State, 133 Ala. 1, 32 So. 158, and the application was denied by the Supreme Court of the United States in 187 U.S. 133, 23 S.Ct. 48, 47 L.Ed. 106. To the same effect are Lucky v. Roberts, 211 Ala. 578, 100 So. 878; McCord v. State ex rel. Allen, 220 Ala. 466, 126 So. 873.

■ The foregoing sustain the trial court in admitting in evidence the declarations made by contestee on his sojourn in the City of Birmingham.

■ We have indicated that it is the established policy of the state that a person be not disfranchised as to his right as

an elector or denied in the privilege to hold office when he has made an honest effort to comply with the law and in that effort has substantially complied with the statutory mandates. Garrett v. Cuninghame, 211 Ala. 430, 100 So. 845; Campbell et al. v. Jefferson County, 216 Ala. 251, 113 So. 230.

 Under the presumptions in favor of the trial judge's findings, we are constrained to declare that no error intervened at the trial and that the judgment of said court should be and it is hereby affirmed.

Affirmed.

GARDNER, C. J., and BROWN, FOSTER, and LIVINGSTON, JJ., concur.

BOULDIN, J., concurs in result.

KNIGHT, J., not sitting.

BOULDIN, Justice (specially concurring).

I concur in the result, in view of the presumption properly indulged in favor of the trial court's finding of facts.

But I think it highly important to call attention to the proposition of law, conceded in the opinion, on the authority of Shepherd v. Sartain, 185 Ala. 439, 455, 64 So. 57.

To state the proposition in the concrete, it is held that if a citizen of any county in Alabama fails to keep up his poll tax payments while a resident of that county, and then removes to and becomes a resident citizen of Jefferson County, duly registers as a voter in Jefferson County, he cannot pay up his back poll taxes in Jefferson County, which accrued while a resident of another county, but must pay them back in the county where he resided when they accrued; and, if paid in Jefferson County, where he resides when they are paid, and where his children, if any, are in school, he is not a legal voter.

The case of Shepherd v. Sartain, is subject to such construction, but, in my opinion, not necessarily so. For aught appearing the court was considering a ballot in an election contest case wherein the voter had paid his poll tax in a "foreign county," a different county from that of his residence entirely, on the assumption that it was only necessary to have a poll tax receipt, no matter in what county it was paid.

I am not willing to commit myself to the propositions that one is not a lawful voter if he has paid up all back poll taxes in the county where he resides at the time of payment, and he desires to qualify as an elector. In this state poll tax is not a debt. It never becomes due in the sense of a legal obligation to pay it. Payment is voluntary, but made a condition precedent to the exercise of the elective franchise. That it is devoted to the public schools is as fully accomplished by payment where he resides at the time of payment, and where his children go to school, as if he went back to another county, where he may have had no children in school, and, where no law imposed any legal obligation to pay it. The question is of great importance to probably thousands of voters where the records disclose full payment of all poll taxes where he resides and offers to vote. Despite such record, this decision renders him subject to challenge upon evidence that he once resided elsewhere, and had not gone back to another county to pay his poll taxes while residing there. In my opinion this view should be reconsidered.