73 So.2d 907

**Ex parte BRASSELL et al.**

4 Div. 796.

Supreme Court of Alabama.

June 30, 1954.

Harold Cook, Birmingham, for petitioners.

Lawrence K. Andrews, Union Springs, for respondent.

PER CURIAM.

This is a petition to this Court by J. W. Brassell and B. L. Cole, separately and severally, for a writ of mandamus or other appropriate writ directed to Hon. J. B. Hicks as judge of the Circuit Court of Russell County, Alabama, as will be more fully set out.

On the 17th day of May 1954, petitioners filed with the State Democratic Executive Committee a contest of the nomination declared by the County Executive Committee to have resulted in favor of William R. Belcher for Place No. 1 as a candidate for the House of Representatives of Alabama from Russell County, and V. Cecil Curtis for Place No. 2 as such a candidate.

The nomination was by virtue of a primary election of the Democratic Party held on May 4, 1954. At the time of filing the contest petitioners deposited with the chairman of the State Democratic Executive Committee the sum of $100 "as security for costs in said contest as provided by law". The chairman gave contestants his receipt so reciting. The record shows that on June 1, 1954, contestants deposited with said chairman an additional sum of $100 "as amendatory of the original security for costs posted by said contestants".

On the 27th day of May, 1954, the chairman of the State Democratic Executive Committee set the 3rd day of June, 1954, as the date for hearing the contest, and appointed a sub-committee of the Executive Committee to hear and determine said contest as provided by law. Thereupon contestee V. Cecil Curtis presented to the State Democratic Executive Committee and its chairman, Ben F. Ray a motion to dismiss the statement of contest filed against him "for that the State Democratic Executive Committee, or any sub-committee it may appoint, does not have jurisdiction, for that, contestant J. W. Brassell has not filed secu-

rity for cost as required by law", and because there was a misjoinder of contests of two distinct offices, and also demurred to the statement of contest.

On said day the sub-committee sustained the demurrer to certain features of the contest. The statement was then amended, and the demurrer was overruled. The committee overruled the motion to dismiss on the ground of an insufficiency of security for costs. The committee then sustained the motion to dismiss on the ground of a misjoinder of parties. Thereupon contestants amended their statement of contest by striking contestee William R. Belcher as a party defendant. The committee thereupon overruled the motion of contestee Curtis to dismiss, and ordered that William R. Belcher be declared the nominee for the member of the House of Representatives from Russell County, Place No. 1, and that he be so certified.

On said June 3, 1954, V. Cecil Curtis presented a petition to the Hon. J. B. Hicks, judge of the Circuit Court of Russell County, praying for a rule nisi directed to the members of the sub-committee, directing them to appear before the circuit court to show cause why they should not be "prohibited from proceeding further with the contest hearing at hand", and upon the final hearing that the court will grant a writ of prohibition or other appropriate writ directing said sub-committee to refrain from hearing the above mentioned contest.

On said date (June 3rd), the Hon. J. B. Hicks as such judge made an order that the rule nisi issue to the members of the sub-committee commanding and requiring them to show cause before the Circuit Court of Russell County, Alabama, on the, to wit, 14th day of June, 1954, why the writ of prohibition should not issue to them as prayed for in said petition, and restrained said sub-committee "from further proceedings in the primary election contest or hearing, as above styled, until the further orders of this court".

Thereafter, on June 7, 1954, contestants filed a petition in this Court for a writ of mandamus or other proper writ to the Hon.

J. B. Hicks as such judge, directing him to set aside said rule nisi and restraining order and to dismiss the petition of contestee for a writ of prohibition to the sub-committee. On June 8, 1954, this Court ordered a rule nisi to issue as prayed for, returnable June 11, 1954. On June 11th this Court ordered a writ of mandamus to issue also as prayed for, but since time was urgent did not prepare an opinion but noted that one would follow. This opinion is in compliance with that notation.

As indicated above, the question presented was whether it was a compliance with section 384, Title 17, Code, for contestants at the time of instituting the contest to deposit $100 as security for the costs of it.

In reply to that inquiry, we observe that if no security is specifically required in such a contest, the deposit was not necessary and jurisdiction was not dependent upon it nor affected by it. We are here concerned with whether jurisdiction of the contest was sufficiently invoked in respect to security. That is dependent upon an interpretation of section 384, supra, in connection with other features of the law. Section 384 has to do with contests for nomination to an office other than a county office. Section 412, Title 17, Code, provides that a county office does not include a member of the Legislature. So that section 384 applies to the nomination of members of the Legislature. It requires a sufficient statement of the contest to be supported "by giving security as elsewhere provided in this chapter".

We must give that clause such interpretation as is consistent with its clearly expressed requirements. In the first place "Security" of some sort is expressly required. It does not take interpretation to reach that conclusion. In fact we believe there is no provision of law for the contest of an election either of a general or primary election without security for costs being given as a jurisdictional requirement. So there must have been "security". It is further specified as to the security that it must be "as elsewhere provided in this chapter". That is exclusive of any provision not in

that chapter,—that is Chapter 2 of Title 17 and relates exclusively to primary elections.

When the contest is of the general election to the Legislature the statement of contest must be as provided in section 236, Title 17. By section 238, Title 17, contestant must give security for the costs of such contest. That requirement is not complied with by the deposit of a sum of money. Wilson v. Duncan, 114 Ala. 659, 21 So. 1017; Pearson v. Alverson, 160 Ala. 265, 49 So. 756; Ex parte Shepherd, 172 Ala. 205, 216, 55 So. 627; State ex rel. Radcliff v. Lauten, 256 Ala. 559, 56 So.2d 106.

But section 238, supra, is in Article 23 of Chapter 1, Title 17, Code, so that it is not in the same chapter in which section 384, supra, is set out, which is in Chapter 2. Section 238, therefore, does meet the specification in section 384, prescribing the security to be "as elsewhere provided in this chapter". This is likewise true as to section 1, Chapter 1 of that title. So that section 238 is eliminated as prescribing the nature of security required by section 384, supra, unless some other provision of Chapter 2 shows that section 238 is referred to in section 384. It is contended that section 373, Title 17, has that effect, in that, it applies to all contests for nomination to any party office, such as a candidate for the Legislature, and provides that they shall be "under the same conditions and on the same grounds as provided in the laws of Alabama for general elections of state and county officers, and as provided in this chapter". Section 374, Title 17, prescribes the grounds of contest of the nomination for an office other than a county office, and therefore it must be followed in the contest of the nomination of a candidate for the Legislature, rather than the general election laws of Chapter 1.

Section 384 provides for security for costs in such a contest as provided in that chapter. So that taken all together they eliminate section 238 as applicable to section 384. The latter statute is satisfied if we can find in Chapter 2 a provision for security to be given on initiating any contest filed by virtue of its authority. We find in section 380 of that chapter the only provision specifying the security to be given on filing a contest under that chapter. It specifies a deposit of $50 as such security and applies by its terms to contests of the nomination to a county office. By its terms it does not apply to members of the Legislature. But since that is the only provision in that chapter specifying the security which shall be given on initiating a contest provided for in it, we must consider whether section 384 refers to it to specify the nature of the security to be given.

A study of the history of section 380, Title 17, in connection with 384, supra, is interesting. They first came into being as sections 45 and 49, respectively, of Act No. 78 of the Legislature of 1915, not signed by the governor, General Acts 1915, pp. 218 and 234. Section 45 of the Act provided that all contests of the nomination "to any office voted for by the voters of one county" must (with the statement of contest) deposit with such chairman the sum of $100 in cash. There was no distinction in that law between a county officer as such and a member of the Legislature. So that it applied to members of the Legislature and county officers alike.

But for nomination "to any State office or to any office *whose functions embrace a political subdivision*" section 49 provided for the nature of the statement of contest, but made no reference to security. Section 50 of that Act provided for security if the contest be of any state senatorial nomination by depositing $25; if the nomination be for chancellor or judge of a court of record $62.50; if for Congress $125; if "of any State office" $250. So that the statutes then required a deposit of $100 for the contest of the nomination to the Legislature, and that was by section 45 of Act No. 78, General Acts 1915, pp. 218 and 234. Sections 49 and 50 of that Act had no application to legislators.

Certain features of the primary election law of 1915 were amended by the Act of September 30, 1919, General Acts 1919, pages 969–979. That Act amended sections 45 and 49, supra. Section 45, General Acts 1919, page 978, in its first clause retained

the feature which applied to the "nomination to any office filled by the voters of a single county". In that clause the security was by depositing $100. The second clause of section 45 as amended was a proviso that where it is a county office, as distinguished from a state office, the amount of the deposit was $50. Section 45 was merged into section 380 of Title 17.

Section 49 of the Act of 1919, supra, amended section 49 of the Act of 1915, supra, so as to apply to the nomination to an office filled by the voters of the entire state, or any subdivision thereof greater than a county. That amendment then for the first time included the provision "by making a security as elsewhere provided in this Act". That Act retained section 50, supra, which fixed the amount of the security for the various contests as to officers, referred to in section 49, which did not include the members of the Legislature but did include state senators when the district was more than one county, and fixed the amount at $25. Where it was a district of only one county section 45 applied and the security was $100.

That was the status until Act No. 56 of February 25, 1931, General Acts 1931, pages 73 et seq., which rewrote the primary election law without reference to such prior law except to repeal all laws in conflict. The Acts of 1915 and 1919 went into the Code of 1923. So that section 45, supra, became section 656. Section 49 became section 661, and section 50 became section 662. The Act of 1931, supra, became Chapter 2 of Title 17, Code of 1940.

Section 45 of the previous acts merged into section 380, Title 17, Code of 1940. Section 49 of the previous acts merged into section 384 of Title 17. Section 50 was not repealed by the Act of 1931, but was not included in Chapter 2, and therefore was repealed. Section 9, Title 1, Code. But that does not apply to members of the House of Representatives.

The effect of that status is that the provision of section 45, supra, for depositing as security $100 for the House of Representatives was stricken out of that statute, leaving a filing fee of $50 for county officers, which is the second clause of section 45 as amended (and that is now section 380, Title 17, Code of 1940); and that contests for nomination to the House of Representatives were put into section 384 (or section 47 of the Act of 1931), which requires security as elsewhere provided in that chapter. That feature of it, as originally in section 49 of the old acts, could not refer to section 50 because it did not apply to the House of Representatives but did apply to some of the senators. So that we cannot get aid from section 50.

The inquiry remains, as we stated at the beginning,—what security is elsewhere provided in that chapter? The Legislature may very well have concluded that the security should be the same as to county and state officers all alike. There is no particular reason for any difference as to the initial security, since the requirements applicable to all contests in primary elections are set up as costs pile up. Sections 390, 391, Title 17, Code.

It is our view that a deposit of $50.00 for each such contest is the amount to be deposited as security when the contest of the nomination to any office is filed. The contestants here deposited sufficient security. Therefore jurisdiction of the committee was acquired for the determination of the contest, and the writ of mandamus was properly ordered by this Court.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the CHIEF JUSTICE under authority of Title 13, § 32, Code, and was adopted by this Court as its opinion.

Writ granted.

LIVINGSTON, C. J., and LAWSON, SIMPSON, STAKELY, GOODWYN and CLAYTON, JJ., concur.

MERRILL, J., concurs in result.

MERRILL, Justice (concurring).

I concur in the result reached in the majority opinion, but I think it was the

intent of the legislature to permit the contest of the nomination for any office other than a county office, without giving security for costs or making a deposit in order to file the contest.

Since the 1931 Act is now codified in the Code of 1940, such comparisons as are necessary will be made between sections of the 1923 Code and the Code of 1940.

Section 656 of the 1923 Code required a deposit of $100 in the contest of any office filled by the voters of a single county, for example, some circuit judges and solicitors, but where it was a county office as distinguished from a state office, the deposit was only $50. Section 656 is now § 380, Title 17. All reference to any deposit for a contest of a state office is dropped and the only deposit required by Section 380 is that of $50 for the contest of a county office.

The pertinent part of Section 661, Code of 1923, is the same as Section 384, Title 17, with the exception that Section 661 provides for the contest of any office to be filled by a vote of the entire state or any subdivision thereof greater than a county, while Section 384, Title 17, provides for the contest of any nomination for other than a county office. Section 661 provides "and by making a security as elsewhere provided in this chapter", while Section 384 provides, "and by giving security as elsewhere provided in this chapter." In the 1923 Code, Section 662 provided for deposits ranging from $25 to $250 for contests of certain named state offices. I think it very significant that there is no counterpart to Section 662 in Chapter 2 of Title 17 of the Code of 1940, which requires no named deposit in any contest except the $50 in the case of the contest of a county office, as provided for in Section 380.

But there are four sections in our primary election laws, two of which are mentioned in the majority opinion, which do require deposit or prepayment by either party. Section 385 provides that the clerk may be required to summon witnesses and to take depositions and that the party so requesting this service shall be responsible for the costs incurred. Section 390 provides for the payment in advance of the costs of summoning witnesses and their per diem and mileage if the chairman of the committee is requested to handle the summoning of the witnesses. Section 391 provides for the deposit of sufficient funds for the expenses of taking testimony before a commissioner. Section 392 provides for the furnishing of railroad fare to any witness who lives more than 40 miles from the place to which he is summoned.

It seems that these are the items which the legislature had in mind when it said in Section 384, "and by giving security as elsewhere provided in this chapter."

This interpretation seems practical because a county committee's treasury is usually small and limited, and a deposit for a contest would sometimes be sorely needed to help defray the expenses of the committee hearing the contest. But the state committee is usually not hardpressed for funds, and by its rules, it pays the expenses of its committee members who hear the contest. Moreover, if an elector were going to contest a statewide election, and desired to base the contest on alleged illegal votes cast in certain boxes in, say 15 different counties, to secure his proof he would have to make considerable deposits to defray the expenses as he went along, but it appears to be rather impractical to require him to put up a $50.00 deposit just because that is the amount required in a county contest.

This brief statement includes some of the reasons why I think the legislature intended that no security or deposit of a named amount was to be required when a contest of a nomination for a state office was instituted, or to use the language of the majority opinion, slightly out of context, since "no security is specifically required in such a contest, the deposit was not necessary and jurisdiction was not dependent upon it nor affected by it."