294 So.2d 743

Walker HOBBIE, Jr.

v.

Robert VANCE et al.

SC 786, 786X.

Supreme Court of Alabama.

May 2, 1974.

Maury D. Smith and T. W. Thagard, Jr., Montgomery, for appellant.

James M. Fullan, Jr., Birmingham, and Joseph D. Phelps, Montgomery, for appellee Jerry Powell.

R. Clifford Fulford and Max Pope, Birmingham, for appellee Robert S. Vance, as Chairman of the State Democratic Executive Committee of Alabama.

PER CURIAM.

Appellant, Walker Hobbie, Jr., qualified as a condidate for the Alabama Senate from new Senate District 26. Another candidate for the same office filed a contest with the State Democratic Executive Committee, hereinafter referred to as SDEC. The ground of contest is that Hobbie is not a resident of District 26. After a hearing before a subcommittee of SDEC on April 3, 1974, the contest was sustained.

Later that same day, Hobbie filed his complaint in the circuit court for declaratory relief and mandamus, seeking to have his name restored to the ballot for the primary election, and by amendment, asking that he not be denied the privilege to run for the office in the general election in November.

The matter was heard before the circuit court on April 8. SDEC filed a special appearance objecting to the court's jurisdiction and moved to dismiss the complaint. The objections and motions were overruled, the case was heard on its merits and the trial court denied all relief prayed for by Hobbie and dismissed his complaint. He immediately appealed to this court and then requested that this court restrain the removal of his name from the ballot pending the appeal. That request was heard and granted on April 10. Both sides assured the court that the record and briefs could be here in less than a week. The temporary restraining order was issued, not on the merits, but because Hobbie's name could be printed on the ballot and, if necessary, later blocked out and the machine lever locked, but if not printed, there would be no space reserved for his name if we later decided in his favor.

■ SDEC's contention that neither the circuit court nor this court had jurisdiction presents a close question, but in view of the charge that the committee failed to apply the "liner" statute, Tit. 17, §§ 18, 19, Code 1940, and the obvious misconstruction of this court's latest pronouncement in reference to Tit. 17, § 18, in an opinion of the Attorney General and in appellant's brief, together with the doubt as to how the liner statute should be applied, and the tremendous public interest in new legislative district lines since the districts were redrawn by the Federal District Court in Sims v. Amos, 336 F.Supp. 924 (M.D.Ala.1972), this court rejects SDEC's contentions as to lack of jurisdiction of this or the circuit court.

The Constitution of Alabama 1901, Section 47, provides in parts pertinent here: "Senators * * * shall have been * * * residents of their respective * * * districts for one year next before their election * * * and they shall reside in their respective * * * districts during their terms of office."

Hobbie concedes that the house he lives in, and has lived in for several years, is in District 28, but his contention is that the liner statute gives him the right to elect whether he wants to vote and run in District 26 or 28 and that he has elected to vote and run in District 26. The pertinent

statutes are §§ 18 and 19 of Tit. 17, Code 1940, and they provide:

"§ 18. When the place of residence of any person is located partly in two or more counties or precincts, such persons may select the county or precinct of their residence, and to that end may file a statement in writing in the office of the judge of probate of the county selected, setting forth the locality of their residence and the lines passing through the same, together with the county or precinct selected for residence, which statement, when filed and recorded, shall establish the residence of the person filing it in the county or precinct of their selection.

"§ 19. Any person who may be declared to be a liner between counties or precincts, and shall have fixed his or her citizenship according to law and that may be hereafter provided in such cases, shall be construed a citizen and elector of the county or precinct in which he or she so fixes his or her citizenship, for all the purposes of this title."

The dividing line between District 28, where Hobbie lives, and District 26, where he wants to be a candidate, is the center line of a paved public road which, at the place in question, runs roughly north and south. Hobbie's house is on the *west* side of that road. It is about 120 feet west of the district line and is situated on a tract of 5.8 acres which surrounds his residence and all of this tract is on the west side of the road. The house, the garage, the adjacent structures and fields in this tract are wholly within District 28.

The land on the east side of the road directly across from Hobbie's residence does not belong to him and is not used by him for residential purposes. The nearest residence on the east side facing Mr. Hobbie's property is that of his brother. North of the brother's residence on the east side of the road is a residence occupied by a black family and then comes the property that Hobbie owns on the east side of the road.

The south line of Hobbie's property on the east side of the road is some 400 feet north of the north line of Hobbie's residence property on the west side of the road. Stated another way, if there were no road in existence, Hobbie's property on the west side of the road would not corner or be adjacent or contiguous to any of his property on the east side of the road. An abandoned gin is situated on Hobbie's property on the east side as are some equipment sheds.

This line between Districts 26 and 28 is the center line of a paved highway. It is quite obvious that the dividing line between the districts does not *split* the Hobbie property. His residence tract is on the west side of the road; the other property is on the east side of the road and even if the road had not been there, he could not walk from his tract where he lives to his property on the east side of the road without crossing the property of another. His home, his residence, his domicile are all on the 5.8 acre tract in District 28 on the west side of the road.

■ Under these facts, our conclusion must be that the "place of residence" of Walker Hobbie, Jr., under § 18, is in District 28 and not in District 26, and this is one of the reasons for our holding.

A second reason is the construction of § 18 in the decisions of this court. We have not been cited to, nor have we found, any case where a voter or a candidate has been adjudged a "liner" where the county, district or boundary did not run through or "split" the house in which he lived.

■ At common law, the liner was usually held to be a citizen of that territory where the majority of the rooms were located, or where he slept and ate. See application of Davy, 281 App.Div. 137, 120 N.Y.S.2d 450; Gray v. O'Banion, 22 Cal. App. 468, 138 P. 977; East Montpelier v. Barre, 79 Vt. 542, 66 A. 100, 10 L.R.A. (N.S.) 874. There is some discussion of

those matters in Danforth v. Nabors, 120 Ala. 430, 24 So. 891.

Hobbie had requested the Attorney General for an opinion as to whether he (Hobbie) could be considered a liner. In that request, Hobbie stated that his dwelling house was in new House District 82 and that the curtilage of his dwelling house and his residence extended across the road into new House District 78, (the same road that divided House Districts divided the Senate Districts.) The Attorney General, through an Assistant, replied in part as follows:

"You state that the curtilage of your house extends into both House Districts 78 and 82. If this is true, then you may select your residency from these two districts, pursuant to Sections 18 and 19."

The opinion of the Attorney General and counsel for appellant construe a paragraph in the latest opinion of this court on the liner statute to be broader than permitted under the facts of that case, Woodall v. City of Gadsden, 278 Ala. 634, 179 So.2d 759, which reads:

"The only other vote assailed is that of Mrs. Maybrene Wagnon. It appears that a part of her home is within the area to be annexed and a part is without the area. The trial court found that under the provisions of Title 17, § 18, Code of 1940, recompiled 1958, that Mrs. Wagnon was allowed to elect which area she preferred to be in. We agree. This statute was enacted to abrogate the artificial and technical rules existing under case law under these circumstances. We think it is clear that she made her election by voting in this election. We are not persuaded that this legislature intended to provide a remedy only when the home of the person was situated on a county or precinct line, but rather we think it was intended to apply in any case where a political line is so drawn that the residence is situated partly on one side and partly on another."

The facts were that a surveyor had checked the houses of several people who had voted in an election to see if they lived in the territory to be annexed. As to Mrs. Wagnon's house, he testified that about a foot of the front porch was within the area to be annexed and the balance of the house was outside the area. The trial court so found and ruled that Mrs. Wagnon's vote should be counted because she was considered as a liner. This ruling was assigned as error on appeal and this court affirmed after making the statement quoted supra.

"Out of the facts the law arises." This was a frequent and favorite saying of Dean A. J. Farrah, for many years Dean of the School of Law at the University of Alabama. The Statement from *Woodall* must be read in connection with the facts in that case. When so read, "the artificial and technical rules existing under case law" were the strict rules of the common law and our statute abrogated those rules to the extent that a person could be considered a liner for voting purposes if the boundary line went through any part of his dwelling house just so long as part of the house was on one side and part on the other, regardless of the size of either part.

The statute, Tit. 17, §§ 18 and 19, abolished consideration of the matters of curtilage, etc. and established a simple test to determine the eligibility of a person to vote in a particular county, precinct or district. If a county, precinct or district line passes through a person's dwelling house, the person may vote in and run as a candidate from either county, precinct or district after making his or her choice according to law.

If the line in question does not pass through the dwelling house so that part of the house lies partly in one county, precinct or district and the other part lies in a different county, precinct or district, then the person living in that house is not a liner and is a citizen and elector of the county, precinct or district in which the dwelling house is situated.

In our form of representative government, our legislative representatives come from specified areas, and our constitution of 1901 requires that they reside in those specific areas for at least one year prior to their election, § 47; Butler v. Amos, 292 Ala. 260, 292 So.2d 645, 1974. Hobbie lives in District 28 and even though he preferred to run in District 26, he must abide by the new district line and vote or run for legislative office in District 28 so long as he lives in that district.

Much emphasis was laid in brief and oral argument on the fact that Hobbie's well and mail box were on the east side of the road. That fact would not be controlling but we do make two observations about this claim.

Hobbie testified that the well, including the pump connected therewith, was some two or three hundred feet on the east side of the road and that the well "furnishes water for all my cattle on this side of the highway, my father and my uncle's residence and all my cattle and my tenant's house." It was also "hooked up" to furnish water to another house. In reality, this is a private, family waterworks system.

As to the mail box being on the east side of the road, it has long been customary for mail boxes to be put on the side of the road which would be on the right hand side of the approaching mail carrier.

This court affirmed the judgment of the circuit court on April 24, 1974, and announced that decision. Since time was urgent, the opinion was not then prepared but it was noted that an opinion would follow. This opinion is in compliance therewith. McCutcheon v. Thomas, 261 Ala. 688, 75 So.2d 649; Ex parte Brassell, 261 Ala. 265, 73 So.2d 907.

The judgment of the circuit court is due to be affirmed. In view of our holding, no action is required on the cross-appeal or SDEC's motion to dismiss the appeal. The temporary restraining order issued by this court pending appeal is hereby discharged.

Affirmed.

MERRILL, COLEMAN, HARWOOD, BLOODWORTH, McCALL, FAULKNER and JONES, JJ., concur.

HEFLIN, C. J., concurs in the result.

MADDOX, J., dissents.

HEFLIN, Chief Justice (concurring in the result):

I agree with the majority opinion that from a factual basis the appellant does not come within the purview of the "liner" statute. However, I disagree with the majority opinion in its construction that the "liner" statute only applies to cases where the division line touches a dwelling house. I would accord the "liner" statute a much broader application.

MADDOX, Justice (dissenting).

Admittedly, this is an extremely close case on the question of whether Walker Hobbie is a "liner." The majority has construed the words "place of residence" in the "liner" statute to mean the actual dwelling. That is certainly one construction, and a reasonable one, to place on those words. I would give the words a broader meaning, and because of this, I express my views in this dissent.

I would permit Hobbie, under the *admitted facts,* to make the election. The basic question is whether Hobbie is a "resident" of Senate District 26. Section 47 of the 1901 Constitution provides, in part, as follows:

"* * * They shall have been citizens and residents of this state for three years and residents of their respective counties or districts for one year next before their election, if such county or district shall have been so long established; but if not, then of the county or

district from which the same shall have been taken; and they shall reside in their respective counties or districts during their terms of office."

The terms "resident," "inhabitant," etc., when used in connection with political rights are synonymous with domicile. Shepherd v. Sartain, 185 Ala. 439, 64 So. 57 (1913); Mitchell v. Kinney, 242 Ala. 196, 5 So.2d 788 (1942); Hadnott v. Amos, 320 F.Supp. 107 (M.D.Ala.1970), affirmed, 405 U.S. 1035, 92 S.Ct. 1304, 31 L.Ed.2d 576 (1972). "Domicile" has been defined as residence at a particular place accompanied by an *intention to remain* there permanently, or for an indefinite length of time. Mitchell v. Kinney, supra.

*Intention* is probably the most critical question involving a person's domicile. A person's domicile may not always be the place of one's actual dwelling. Ex Parte Weissinger, 247 Ala. 113, 22 So.2d 510 (1945).

What did Walker Hobbie do in order to establish that he was a "resident" of Senate District 26? A short statement of the facts will show he did everything he could, legally, except physically change the place where he ate and slept. I would tip the scales in favor of his being a "liner." The fact that he slept and ate on one side of the line and carried on most of his farming activity on the other side of the line, I believe is not controlling.

The dividing line between Senate Districts 26 and 28 is the Hansey Mill Road (sometimes called the Hobbie Road). Hobbie lives on Hansey Mill Road near a place designated on the official county map of Montgomery County as the "Hobbie Farm." The subject of this controversy revolves around this road at Hobbie's dwelling. Hobbie was born and reared within one quarter mile of his present dwelling place. Other members of his immediate family live in the vicinity. Various tracts of land are owned by Hobbie and his relatives. Hobbie is a cattle farm-

er. His dwelling house and a garage are entirely within Senate District 28.

When Hobbie learned that under the federal court ordered redistricting plan his dwelling was located in Senate District 28, he first went to talk to the United States District Attorney. Later, on September 27, 1973, over five months before he qualified, Hobbie requested an opinion from the Attorney General of Alabama, which request sought to determine whether he was a "liner" within the purview of Title 17, Sections 18 and 19, Code of Alabama, 1940. These sections provide:

"§ 18. Residence in two or more counties; right to select.—When the *place of residence* of any person is located partly in two or more counties or precincts, such persons may select the county or precinct of their residence, and to that end may file a statement in writing in the office of the judge of probate of the county selected, setting forth the locality of their residence and the lines passing through the same, together with the county or precinct selected for residence, which statement, when filed and recorded, shall establish the residence of the person filing it in the county or precinct of their selection." (Emphasis added.)

"§ 19. Liners between counties or precincts.—Any person who may be declared to be a liner between counties or precincts, and shall have fixed his or her citizenship according to law and that may be hereafter provided in such cases, shall be construed a citizen and elector of the county or precinct in which he or she so fixes his or her citizenship, for all the purposes of this title."

The Attorney General replied, in part:

"It is apparent from the facts in your letter that the basic issue is whether a person is a 'liner' under Sections 18 and 19 only when his 'home' is divided by two or more districts or whether he is a liner when any part of the land on

which his home is situated is divided by two or more districts.

"In Woodall v. City of Gadsden, supra, at 278 Ala. 637, 179 So.2d 759, the Alabama Supreme Court stated in reference to Section 18 that 'we are not persuaded that his legislature intended to provide a remedy only when the *home* of the persons was situated on a county . . . line, but rather we think it was intended to apply in any case where a political line is so drawn that the *residence* is situated partly on one side and partly on another.' " (Emphasis added.)

"The determinant then as viewed in Woodall is not the position of a person's *home* on a county or district line, but the position of his *residence* on a county or district line. Residence, therefore, is different from simply the area of a home and, accordingly, must extend beyond the walls of a house. Exactly how far a person's residence extends over his property I do not think it is necessary to determine in this opinion; but, surely, it extends *at least* as far as the curtilage to a person's house.

"Therefore, it is concluded that if the curtilage of a person's home is situated partly in more than one district, he may select his residency from among those districts in which the curtilage of his home is in part situated.

"You state that the curtilage of your house extends into both House Districts 78 and 82. If this is true, then you may select your residency from these two districts, pursuant to Sections 18 and 19." It will be noted that the Attorney General did not make a finding of fact that Hobbie was a "liner." However, in his request to the Attorney General, Hobbie had set out the following facts:

"(I am) a resident of Route 1, Box 384, Montgomery, Alabama. My dwelling house is situated some five miles south of Snowdoun, Alabama, approximately 100 feet west of the center of Hansey Mill Road in new House District 82, according to the redistricting plan of the United States District Court for the Middle District of Alabama, q. v. at Sims v. Amos, 336 F.Supp. 924 (1972). The curtilage of my dwelling house, and my residence, extend across the Hansey Mill Road into House District 78, according to said plan, and into voting precinct 26 in this House District. *Specifically, my well, cotton gin, dairy, tenant house, garage, barn, equipment shed, catch pens, pecan grove, storage, parking area and future home site* are on the east side of Hansey Mill Road with nothing on its west side except my dwelling house proper. My family and I have always voted in what is now New House District 78." (Emphasis added.)

Since the Attorney General did not discuss the importance, or lack of it, of the political line being in the middle of a public road, I cannot tell whether he considered it significant. The request did show Hobbie thought his curtilage extended across the road.

After receiving the Attorney General's reply, Hobbie, on December 27, 1973, filed with Probate Judge Perry Hooper the following:

"Pursuant to the provisions contained in Sections 18 and 19 of Title 72 [17], Code of Alabama, 1940, recompiled 1958, and a recent opinion of the Attorney General of the State of Alabama, I would like to advise you that under the definitions contained therein my residence is a 'liner' case. I shall therefore advise you that under the authority contained therein I am declaring my residence in Beat 26, Montgomery County, Alabama, House District 78 and Senate District 26.

"I am a resident of Montgomery County, Alabama, and all of my residence, including the curtilage, lies in Beat 26, but the residence including curtilage is separated by lines forming House Districts 78 and 82 and Senate Districts 26 and 28.

"As stated above, I declare my place of residence to be in House District 78 and Senate District 26."

Hobbie took all these actions prior to the time he qualified on February 2, 1974 to run in the Democratic primary as a candidate from Senate District 26.

After March 1, 1974, Jerry Powell, a candidate from the same Senate District 26, filed a contest with the State Democratic Executive Committee, claiming Hobbie was not a "resident" of Senate District 26. A hearing was held by a subcommittee of the State Democratic Executive Committee and Powell's contest was sustained. Hobbie immediately filed this action in Montgomery Circuit Court against Robert S. Vance, as chairman of the State Democratic Executive Committee, Mabel Amos, as Secretary of State, Jerry Powell, who contested his candidacy, the probate judges of Montgomery, Elmore and Crenshaw counties, and Oscar David Cook, another candidate from Senate District 26.

Hobbie asked that the court declare him to be a "resident" of Senate District 26 and to enjoin the defendants from removing his name from the ballot. The trial court denied him relief and Hobbie appealed.

The State Democratic Executive Committee, the trial court and the appellees here on appeal put great stress upon the fact that Hobbie's dwelling is separated from his well, security light, mail box, barns, equipment sheds, a garage, cotton gin, dairy catch pens, tenant house and *future homesite*. As a matter of fact, in his answer, Rober S. Vance admits, " * * * that plaintiff's well, security light, mail box, barns, equipment sheds, a garage, cotton gin, dairy catch pens, tenant house, and his *future homesite* are located on the east side of Hansey Mill Road, all as more fully *described* and *found* in the *Opinion* and *Decision of the Subcommittee* dated April 3, 1974. . . . However, this defendant does not acknowledge that all of said averments here admitted are relevant or material." (Emphasis added.)

The trial judge, the State Democratic Executive Committee and appellees, Vance and Powell, appear to base their case upon the proposition that the curtilage of a dwelling house does not extend across a public roadway. They cite a Court of Appeals case, Holland v. State, 11 Ala.App. 164, 65 So. 920 (1914), which admittedly defines curtilage as:

" * * * [T]he space of ground adjoining the dwelling house, used in connection therewith in the conduct of family affairs and for carrying on domestic purposes. It need not necessarily be separated from other lands by a fence, nor does the intersection of a divisional fence necessarily affect the relation of a building thus separated from it, but it is otherwise as to an outhouse if the contiguity is broken by a public highway intervening between the outhouse and the dwelling.—State v. Sampson, 12 S.C. 567, 32 Am.Rep. 513; Curkendall v. People, 36 Mich. 309; State v. Stewart, 6 Conn. 47."

While *Holland* and the cases cited by appellees, Vance and Powell, stand for the proposition that a curtilage does not extend across a public road, I think that proposition inapposite. *Holland* was a prosecution for *arson*. This is an *election law* case. The "liner" statutes deal with *political boundaries,* not definitions of "dwellings" in arson cases. Whether political boundaries run down the middle of public roads, through the middle of houses, or through a curtilage, the question is always, "Is a part of the *place of residence* over the boundary?" If so, a person is a "liner."

What does "place of residence" in Title 17, § 18 include? I have found no decision which construes Alabama's "liner" statutes specifying in detail the extent of the area intended by the term "place of residence" in the "liner" statutes, but in Woodall v. City of Gadsden, 278 Ala. 634,

179 So.2d 759 (1965), this Court held the "liner" statutes were designed to "abrogate the artificial and technical rules [of] case law."

Hobbie thought he was a "liner." The majority holds that since the political line did not run through a portion of his *house*, he cannot be a "liner." Most of the "liner" cases involve houses on boundaries. However, in Gray v. O'Banion, 23 Cal. App. 468, 138 P. 977 (1913), ranch hands who lived in bunk houses away from the main dwelling were held to be residents of the district where the bunk house was located. No "liner" statute was involved.

The Attorney General specifically told Hobbie that if the line ran through his curtilage, at least he could claim "liner" status. I would give weight to the Attorney General's opinion—first, because I think it is right, and second, because this official opinion may be given some weight as a factor in this Court's judicial construction of the statute. Shepherd v. Sartain, supra.

Where a person's dwelling is upon a dividing line between two political subdivisions, the situation is obviously a technical one, and the rules for determining domicile are in such cases necessarily more or less artificial. I believe that the "liner" statute was intended to abrogate these artificial and technical rules. Our first liner statute was approved in 1895, Acts of Alabama, 1894–1895, p. 346. It provided, in part, as follows:

" * * * That when the *residence* of any person in this state is located partly in two or more different counties, or different beats, that such persons may

select the county, or beat of his residence. . . ." (Emphasis added.)

In Danforth v. Nabors, 120 Ala. 430, 24 So. 891 (1898), Danforth's dwelling was located on the Jefferson-Blount County line. This Court discussed the fact that Danforth's barn, stables and cookroom were all in Jefferson County. This Court's discussion of the location of the barn, stables and cookroom indicate to me that the word "residence" is not limited to the physical dwelling house. In any event, our present "liner" statute reads *"place* of residence," not just "residence" as did the 1895 Act.[1] That makes me feel that the words "place of residence" are a little broader than the word "residence." The word "place," while it includes "an individual *dwelling* or estate," also includes "HOMESTEAD." Webster's Third New International Dictionary.

The word "place" has several meanings. In its primary and most general sense, it means locality, situation or site, and is also often used to designate an occupied situation or building or an estate.

Since Hobbie's barn, well, security light, mail box and *future homesite* were admittedly located on the other side of the boundary, albeit some of them were 300 yards from Hobbie's house, I think Hobbie's house was just the center of his *domestic, social* and *civil* life—his cattle farm. His "place of residence" would be a *farm.* That is why I would not confine him to any physical sort of living quarters. In defining home, " * * * The term 'place where a person dwells' is used because it has no legal connotation and *is not confined to any physical sort of living quarters."* Restatement 2d, Conflict of Laws, Vol. 1, p. 50.

1. Had the Alabama Legislature desired to limit the words "place of residence" to the dwelling, it could have done what Pennsylvania did. Pennsylvania's Act, as set out in Lancaster v. Bare, 8 Pa.Dist. 472 (1899), provided:

" * * * '[F]rom and after the passage of this Act, whenever the dividing line between any township and borough, or between any two townships in this Commonwealth, as now or hereafter may be located, shall pass through the *mansion-house of any tract of farm land,* it shall be and may be lawful for the owner of the lands so divided to choose as the place of residence of its occupants either of the townships or the borough, by a written notice of his election to the commissioners of the county.' "

Liberally construing Section 47 of our Constitution, Hobbie is as much a "resident" of his land on the east side of the political boundary as he is of his land on the west side of the same boundary and from the evidence in the record, he is more closely related to District 26 than to District 28.

Hobbie attempted to show he was registered to vote in Senate District 26 at the time of trial. He attempted to show he had voted in what is now Senate District 26 in prior elections. The trial court sustained objections to the questions seeking to elicit this evidence. Hobbie also sought to show, but without success, because the trial court refused to permit him to show, that he banked in District 26, that his children attended school in District 26, that he attends church in District 26, that his wife is registered to vote in Senate District 26. I think the trial court erred in refusing to permit this evidence. *Intent* is critical in all cases involving a person's "residence" for voting purposes. In fact, Hobbie's effort to show where he was *officially* registered to vote was especially critical. As was said in Shepherd v. Sartain, 185 Ala. at page 452, 64 So. at page 63 :

"The registration books and lists prepared and kept by the county board of registrars are conclusive as to the fact of the registration of those voters whose names affirmatively appear thereon, and are presumptive evidence of their qualifications as voters."

The right to seek and hold public office and to engage in political activity is a valuable one. The right of a candidate to seek public office is intertwined with the right of a voter to vote effectively. An infringement of one right will have a deleterious effect upon the other. In fact, it has been said that any questions or doubts relating to the *eligibility* of a candidate to seek a political office should be resolved in favor of the candidate. McKinney v. Kaminsky, 340 F.Supp. 289 (M.D.Ala.1972).

I am not unmindful that the trial court saw and heard the witnesses, and normally a presumption of correctness attends his findings of fact. However, I believe from an examination of the verbal opinion of the trial judge, which is in the record, that he felt bound by the *Holland* case which said the curtilage does not extend across a public road; and if *Holland* was inapplicable, that the well, security light, mail box, etc., in any event were not within the curtilage. I have said above why I think *Holland* is inappropriate under the "liner" statutes. I further think the trial court incorrectly ruled that evidence as set out above was not admissible on the question of his "domicile."

In any event, I think Hobbie's curtilage extended into District 26. Criminal law definitions of "dwelling" seem inapposite when we are dealing with a *right to vote*. Furthermore, *physical presence* is not a prerequisite for determining residence or domicile for voting. Gray v. Main, 309 F. Supp. 207 (M.D.Ala.1968).

Again, let me say that this is a close case. As with all cases involving statutory construction, we have to determine legislative intent. I would tilt the scale in favor of allowing Hobbie to pick his district since the boundary runs between his house and his barn, his well and other integral parts of his farm. I would permit him to choose District 26 as the "domicile of choice," not only because the "liner" statute seems to authorize it, but because it was admitted much of his farming operations and his *"future homesite,"* (or permanent abode) is located there.