420 So.2d 247 (1982)
James R. KNIGHT, etc.
v.
Billy GRAY, Bob Brooks, C. Pat Reynolds, H. H. Wheeler, Don Siegelman as Secretary of State, and O. H. Florence as Jefferson County Probate Judge.
81-973.
Supreme Court of Alabama.
August 27, 1982.
Rehearing Denied October 1, 1982.
Edward Still, Birmingham, for appellant.
John S. Foster, Birmingham, for appellees.
Charles C. Pinckney, of Lange, Simpson, Robinson & Somerville, Birmingham, for amicus curiae Jefferson County Republican Executive Committee.
SHORES, Justice.
This expedited appeal involves an action for injunctive and declaratory relief against James R. Knight, as chairman of the State Democratic Executive Committee, by four candidates for the Alabama legislature, each of whom was declared ineligible to run in the Democratic Primary by a subcommittee of the State Democratic Executive Committee. The subcommittee held that each candidate (plaintiff) did not meet the party's one-year residency requirement, as it construes § 47, Ala.Const. 1901, or the party rule requiring that a candidate be a "qualified elector" in the district which he seeks to represent.
Each candidate's complaint alleged that the party subcommittee lacked jurisdiction to hear a challenge to their status until after the primary and that each had fulfilled the constitutional residency requirement.
The trial court held:
"[T]he state Democratic Executive Committee [did not] have jurisdiction to determine in advance of a primary election the eligibility of a candidate in such primary for the office sought.
"[A]nd following the 1982 reapportionment of the legislature under Act 82-629, *248 adopted on June 1, 1982, ... a candidate for a legislative office [is not] required to live for one year prior to the November 2, 1982, general election in a Senate District or House District established under said act."
This appeal followed.
We hold that the Democratic Party has authority to hear pre-primary challenges to the political or legal qualifications of its candidates. Ala.Code 1975, §§ 17-16-12, -14. See, Hobbie v. Vance, 292 Ala. 367, 294 So.2d 743 (1974).
We reverse that portion of the decree which overturned the party's ruling rejecting, on residency grounds, the candidacy of each of the appellees. The facts are not materially disputed, and, because of the similarities as among the appellees, we will recite the facts pertaining only to appellee Gray.
Gray has resided in "old" House District 34 (in the same residence) for a number of years. Because of the redrawn house district lines by the reapportionment act of the legislature, Act 82-629, effective June 1, 1982, Gray's home is now located in an area that is in House District 32. Gray timely qualified as a candidate for the House of Representatives from the "new" House District 34, which embraces a portion of "old" 34, but does not include Gray's present residence. Gray alleged and testified at trial that he intended to move to a new home in House District 34 before the general election.
Section 47 of the 1901 Constitution provides, in pertinent part:
"[Senators and representatives] shall have been citizens and residents of this State for three years and residents of their respective counties or districts for one year next before their election, if such county or district shall have been so long established; but if not, then of the county or district from which the same shall have been taken. ..." (Emphasis supplied.)
Article VII, Section 1, paragraph (f)(1), of the Democratic Party rules reads, in pertinent part:
"The following persons and none other shall be eligible to be candidates for nomination or election in said primary elections, namely: qualified electors who possess the qualifications fixed by law for the respective offices for which they are candidates for nomination or election...."
The party, through brief of counsel, states:
"The Democratic Party of Alabama has interpreted Section 47 as meaning that the residence of the candidate must have been for at least one year at one or more successive places within the physical confines of the district the candidate wishes to serve. This would have the practical value of assigning each potential candidate to one and only one district."
We hold that this is a permissible interpretation of § 47, insofar as candidates running in the party primary are concerned. "The State Executive Committee of a party has full right, power and authority to fix and prescribe the political and other qualifications of its own members and to determine who shall be entitled and qualified to vote in primary elections or be candidates or otherwise participate therein ... just so such Committee action does not run afoul of some statutory or constitutional provision." Ray v. Garner, 257 Ala. 168, 57 So.2d 824 (1952). The construction of § 47 which the party makes is not an unreasonable one and is certainly not foreclosed by the language of that provision. Section 47 was placed in the Constitution at a time when county lines defined legislative districts. No house district was smaller than an entire county, and, although the more populous counties were represented by more than one member of the House of Representatives, all were elected countywide, and not from designated districts. Senate districts were composed of one or more counties. The term "district," as used in § 47 when originally incorporated into our Constitution, therefore, referred exclusively to senatorial districts. Members of the House of Representatives at that time represented *249 counties, not districts, as that term is now defined, thus, the constitutional reference to "counties or districts."
Therefore, § 47 did not address the present situation where legislative districts are drawn without reference to county lines or any other traditional geographical boundaries.
The plaintiffs argue that § 47 mandates that they be allowed to run in any district so long as a part thereof was taken from the district in which they have previously resided for one year. This would allow five districts in which Gray could run so long as he indicates an intention to move to that district before the general election. The party would limit that choice to onethe district in which he has resided for at least one year. The party points out that this interpretation has the practical value of assigning each potential party candidate to one and only one district. We agree and add that it also has the practical advantage of treating all potential party candidates for such district equally. To follow the plaintiff's argument would give candidate Gray a choice of five districts in which to run, whereas another candidate for the same position might be limited to one.
We hold that the Democratic Party is within its prerogative in interpreting § 47 as it does for purposes of its party primary. Whether the plaintiff's arguments would find more acceptance were we dealing with a candidate seeking certification as an independent in the general election we do not decide because that question is not before us.
We acknowledge that an opinion of the attorney general dated November 18, 1981, supports the plaintiff's arguments. The opinion sets out State Representative J. E. Turner's request for opinion:
"I am presently the Representative from House District No. 96. I reside in Turnerville, Mobile County, Alabama. My present residence will be located in House District No. 97 under the new reapportionment plan which has been passed by the Legislature and sent to the Governor for his signature. My question to you is: If I choose to move my residence into House District 96, how long must I reside in that district to be able to run as Representative from that newly created district or, by what date must I move into that newly created district to meet any residency requirements? I would further point out for your consideration that should I move, the place of my new residence would have been included in old House District 96 from which the newly created House District 96 was taken. I point this out in light of Section 47, Constitution of Alabama 1901."
The letter opinion continues:
"It is the opinion of this office that should you move your residence into that area encompassed by `new' district 96 prior to the general election on November 2, 1982, you will have sufficiently met Alabama's constitutional residency requirements. [Herein is set out the pertinent portion of § 47, Alabama Constitution.]
"Under the reapportionment law, Act No. 81-1049, new district 96 will not come into existence until November 3, 1982.[1] Since the new district which you wish to represent will not have been established for a year, under the exception clause of Section 47, it is required that you have resided for at least one year in the district from which the new district has been taken. The new district has been taken in part from old district 96. You currently reside in and represent old district 96. If you move to that area currently in old district 96, but also encompassed by what will be new district 96, you then will have met the residency requirements for you will have always resided in that district from which the new district was taken and when the new *250 districts come into being you will be a resident of the district which you hope to represent.
"In arriving at this conclusion, I am guided by the Alabama Supreme Court's view of the purpose of Section 47 of the Alabama Constitution which was set forth in Butler v. Amos [292 Ala. 260], 292 So.2d [645] at 646 [(1974)]:
"`It is clear from this history that "the intent and object originally intended to be accomplished" was that a legislator must have lived at least one year in the same district with the people he sought to represent in the legislature so that they could know him and he could learn something of their needs."
"The people who you seek to represent are principally those who you already represent and who have come to know you. Your change of residence in accordance with this opinion will be consistent with the object originally intended to be accomplished by Section 47 of the Constitution of Alabama, 1901."
Whether we would agree with this opinion in the context of an independent candidate's running in the general election is an issue we also pretermit. We simply hold that it does not foreclose the position taken by the Democratic Party here for purposes of its primary. Indeed, whether § 47 has any application after the reapportionment of the legislature to comport with federal requirements is itself subject to debate. This issue too we leave for another day.
The judgment appealed from is reversed, and the cause remanded for the entry of a judgment consistent herewith.
REVERSED AND REMANDED.
MADDOX and EMBRY, JJ., concur.
ALMON, J., concurs in the result.
TORBERT, C. J., with whom FAULKNER and BEATTY, JJ., join, concurs in the result, with opinion.
JONES, J., dissents, with opinion.
TORBERT, Chief Justice (concurring in the result):
We are called upon to construe the meaning of a constitutional provision which requires that a candidate for the legislature reside for one year prior to the election in the district he seeks to represent, which also contains a special provision applicable when the district has not been established for one year before the election, to-wit: "but if not, then of the county or district from which the same shall have been taken." It is my view that the Party's subcommittee has reached the correct result in the case of these particular candidates, but nevertheless misconstrued the "but if not" clause of § 47. Likewise, I think this Court has reached the correct result in this particular case, but the Court should go further and construe the "but if not" clause so that its meaning is made certain and clear in the future.
This clause first appeared in the Alabama Constitution of 1875, where it was part of Art. IV, § 4. That section was brought forward almost verbatim into the Constitution of 1901, as § 47. While it is true that in 1875 and in 1901, the members of the constitutional convention probably could not have foreseen a situation where legislative districts would be drawn on any basis other than county lines, it does not necessarily follow that our present apportionment system, based entirely on population, has made the "but if not" clause meaningless.
The purpose and meaning of the "but if not" clause are not at all difficult to understand, nor is it difficult to perceive that it could have application in the context of today's apportionment scheme.
Section 47 requires that a candidate reside in a district for one year before he can be elected to represent that district. There is a good reason for this:
"It is clear from ... history that `the intent and object originally intended to be accomplished' was that a legislator must have lived at least one year in the *251 same district with the people he sought to represent in the legislature so that they could know him and he could learn something of their needs."
Butler v. Amos, 292 Ala. 260, 262, 292 So.2d 645, 646 (1974).
This purpose is fulfilled perfectly by a literal reading of the "but if not" clause. Read literally, the "but if not" clause can apply only in a case where a new county or a new district is created entirely out of an old county or an old district. Only in that limited situation will there be a "county or district from which the same [i.e., the new county or district] shall have been taken." (Emphasis added.) It does not apply to a situation where a new county or district is created out of several old counties or districtsand for good reason. It is important to note that the clause contemplates only one old county or district: "but if not, then of the county or district from which the same shall have been taken"not "a county or district" or "any county or district," but "the county or district."
There is valid reason for this saving clause. The framers foresaw the situation where a person has lived in a district more than a year and has become known by the others in his district and has come to know them, so that the purpose of the residency requirement, as set out in Butler, is met, but who finds that, less than a year before the next election, his district has been subdivided so that some of the people in his old district are cut off and put in a district by themselves, and the new district line is between him and them. That situation would look like this:

*252 The "but if not" clause was intended to allow the candidate who has resided for over a year in District ABC, to run for election as a legislator representing District C. Why should he not be allowed to? The purpose of the residency requirement has been metthe candidate has spent over a year in the (old) district with residents of C, just as he has with the residents of A and B, and residents of C should know him just as well as residents of A and B.
This particular provision becomes important when we consider that the candidate, while a resident of B, may in actuality be closer to the residents of C than to the other residents of A and B. Consider an additional element in our hypothetical:

In this case, it is clear that the candidate will be closer to the people of "new" District C than to the people of District AB even though he is not in "new" District C. If the candidate is willing to move the short distance to C (and perhaps it would be immaterial whether he moved before or immediately after the election), why should the people of "new" District C not be permitted to choose him as their legislator? No policy or purpose of § 47 would be defeated by such a choice; on the contrary, this is exactly what the "but if not" clause allows.
But now let us try to apply § 47 to the situation of candidate Gray in the present case. He resides in "old" District 34, but that district has been carved up and divided among several "new" districts. His situation would be that of the following diagram, in which the inside square represents "old" District 34, and the outside triangles represent "new" districts:
 *253 Candidate Gray wishes to move from "old" 34 to "new" 34 and run for election there. The "new" district has been in existence for less than a year, so Gray does not have time to meet the general requirement that he reside there for one year before the election. Therefore, he seeks to invoke the "but if not" clause of § 47he says, in effect, "But I have lived for the past year in one of the old districts from which the new district has been taken."
The "but if not" clause cannot be applied to Gray's case. To so apply it would defeat the letter and the spirit of § 47. He is not within the letter of it because "old" 34 is not "the county or district" from which the new one was takenit is "one of the districts" from which the new one was taken. But more important, he would not be within the spirit of § 47: the purpose of § 47 being that the candidate must have been in a district with his constituents long enough (one year) for them to learn him and for him to learn of their problems. Butler v. Amos, supra. In Gray's situation there will be others in the new district who have not been in the old district with Gray for the year preceding the election. To allow him to run in "new" 34 would, therefore, violate the purpose of § 47 as it was set out in Butler.
Now that district lines are drawn according to the population patterns and not according to county lines, is there any present field of operation for the "but if not" clause? Yes. Consider another hypothetical: Suppose that in a certain county there are three legislative districts, and the census figures allow 30,000 persons per district. The county would look like this:

Suppose that after the next census, we still have one legislator for 30,000 people, but that 15,000 people have moved from District 2 to the eastern half of District 3. The lines might be redrawn so that the county looks like this:

In this example District 1 remains unchanged; District 2 is enlarged to include the west half of "old" District 3; and a "new" District 3 is created. If the next election is less than a year away, then the "but if not" clause would allow a person who has lived for a year anywhere in the "old" District 3 to move into "new" District 3 and automatically meet the one-year residency requirement. To allow this result would comport with both the letter and the spirit of § 47, Const. 1901.
To the extent the Party has interpreted § 47 as requiring that a candidate must have lived for one year within the land area of the "new" district, I think it has erred. Nevertheless, as § 47 relates to the situation of these particular candidates, I think the Party and this Court have reached the correct result. I do think the meaning of the "but if not" clause should be directly addressed in this case.
FAULKNER and BEATTY, JJ., concur.
JONES, Justice (dissenting).
I respectfully dissent. Because I agree with the rationale and the conclusion in the Attorney General's opinion cited in the majority opinion, I preface my dissent with this observation: The language from the Attorney General's opinion, "new district 96 will not come into existence until November 3, 1982," is technically incorrect. When, in fact, it came into legal existence depends upon the action of the United States Attorney General pursuant to the 1965 Voting Rights Act. While this inaccurate premise may materially affect Representative Turner's situation under Act No. 81-1049 (the same having been approved by the legislature October 26, 1981), it is conceded by all parties in the instant case that House District 34 was established less than one year from the date of the general election, thus invoking Section 47's "but if not" clause.
*254 Acknowledging that the Attorney's General's opinion is contrary to its position, the Party, through counsel's brief, uses multiple examples to demonstrate "how unfair [the Attorney General's] interpretation would be."
"Let us assume a legislative district made up of two towns called Alpha and Bravo and a neighboring district containing the town Charlie. Under the new reapportioning act, Alpha becomes a district by itself, and Bravo and Charlie are joined in one district. The Attorney General would allow any resident of Alpha to move to Bravo or Charlie and claim that he had lived for one year in the new Bravo-Charlie District."
I interrupt this recitation of the Party's "unfair" examples to make this comment: The last-quoted sentence from the Party's brief is in error to the extent that it interprets the Attorney General's opinion as allowing a resident of Alpha to move to Charlie and claim that he had lived in the new district for one year. The point that was raised initially in Representative Turner's letter, and re-emphasized in the Attorney General's opinion, was the fact that Representative Turner proposed to move "to that area currently in old district 96, but also encompassed by what will be new district 96." This is true because Section 47 of the Constitution, specifically the exception clause, can only be interpreted to provide that if the district which the candidate seeks to represent has not been established for one year next before the election, then such candidate shall have been a resident of such district from which the newly-established district has been taken for one year next before the election. By way of a footnote to the last-quoted sentence from the Party's brief, counsel makes the following comment:
"Under the opinion to J. E. Turner, an incumbent legislator would have to be careful not to move out of his present district, but there is no reason to restrict the Attorney General's reasoning so as to prohibit a non-legislator's move into any part of the new district."
Unless the comment contained in this footnote is a play on the words "you currently... represent old district 96," thus interpreting the Attorney General's opinion as making a distinction between an incumbent and a non-incumbent candidate, I fail to understand the point of the comment. Suffice it to say, assuming the accuracy of the factual premise sufficient to invoke the "but if not" clause, I agree with the Attorney General's interpretation of Section 47. The opinion's references to Representative Turner's incumbency is speaking merely within the context of Representative Turner's situation, and not for any purpose of distinguishing Turner's situation from that of any other candidate otherwise situated.
I recite another "unfair" example from Appellant's brief:
"The town of Delta was formerly a district. It has recently been split among four new districts. Under the Attorney General's opinion, any resident of Delta could move to any of the four districts and be a qualified candidate because each includes some part of Delta."
Again, the Party's conclusion, in my opinion, is a misinterpretation of the Attorney General's opinion. "Any resident of Delta" could not meet the one-year residency requirement by moving to any part of the four new districts merely because each includes some part of Delta. Such an interpretation is not in keeping with Section 47. Only if he moved to some portion of the new district that was also in the old Delta district, could he meet the "from which the same shall have been taken" criterion of Section 47. I will pursue my analysis of this point within the context of the instant facts later in this dissent.
The principal objection raised by the Party to the Attorney General's opinion is the choice which it gives to one citizen that may not be available to another. To this I would answer: This choice, under prescribed circumstances, is the very choice inherent in the "but if not" clause of Section 47.
Admittedly, Section 47 of the Alabama Constitution, including the "but if not" clause, was drafted and adopted in contemplation *255 that counties, as political subdivisions, would serve as the basis for delineating House districts and Senate districts with one or more representatives from each county and one or more counties within each Senate district. While the federally-mandated reapportionment scheme abandons the county unit or political subdivision concept, thus creating an environ not contemplated at the time of the adoption of Section 47, I see no reason for treating our own constitutional mandate as inapplicable for reasons of obsolescence or difficulty of application.
For the sake of clarifying my position, I now interpret and apply Section 47's "but if not" clause to Candidate Gray's situation. Immediately before June 1, 1982, Gray lived in House District 34, where he has resided for approximately nine years. In response to the United States Attorney General's partial disapproval of the 1981 reapportionment act (pursuant to Section 5 of the 1965 Voting Rights Act, 42 U.S.C. § 1973c), the state legislature adopted Act No. 82-629, effective June 1, 1982. By virtue of the newly-drawn House district lines, "old" House District 34 is overlapped by five new House districts. Gray now resides in "new" House District 32.
If, before the 1982 general election, Gray changes his residence to new House District 34, which residence site is also located in an area formerly encompassed by old House District 34,[1] he has complied with the one-year residency requirement of Section 47. It is clear that, except for the "but if not" clause, the one-year residency requirement could not be met under the instant circumstances. It is the "but if not" clause, however, when given a reasonable and logical field of operation, that brings Gray, subject to certain contingencies, within its compliance.
It is without dispute that "new" House District 34 has not been established for one year before the election. It must be determined, then, if Gray has been a resident for one year of the House district from which the "new" House district has been taken. Assuming his residency in that portion of "new" House District 34 which also comprised "old" House District 34, it is clear that he has been a resident for more than one year of the "district from which the same [the new district which he now seeks to represent] shall have been taken."
In conclusion, I emphasize that my interpretation neither overrules, modifies nor weakens Butler v. Amos, 292 Ala. 260, 292 So.2d 645 (1974). Indeed, I fully embrace Butler's holding that the viability of Section 47's one-year pre-election residency requirement is unaffected by the federally-mandated reapportionment of the state legislature.
I would simply hold that this constitutional one-year pre-election requisite shall have been complied with in the event the Appellees are, on November 2, 1982, residents of an area in their respective "new" districts in which they have qualified as candidates, which were part of the area comprising their former house districts and in which they had resided for more than one year. It is my view that any other holding would violate both the spirit and letter of Section 47. I believe the majority has erred in giving a party rule and its interpretation status superior to that of our State Constitution.
NOTES
[1] The language "new district 96 will not come into existence until November 3, 1982," is technically incorrect; and while this inaccurate premise would materially affect Representative Turner's situation under Act No. 81-1049 (the establishment date of House District 96 being October 26, 1981), it is conceded by all parties in the instant case that House District 34 was established less than one year from the date of the general election.
[1] The condition of Gray's moving before the 1982 general election is stated in the context of Gray's allegation and proof of intent to move and not as a legal requirement. In fact, other than the one-year requirement, the only constitutional residency requirement is found in the last clause of Section 47: "[A]nd they shall reside in their respective counties or districts during their terms of office." Under my interpretation, therefore, if Gray is elected in the general election as a state representative from District 34, he can then serve in that capacity so long as he resides in District 34 during the term of his office; i.e., he could await the outcome of the general election, and then, if elected, he could move into new District 34, as hereinabove discussed, and hold office during his term so long as he continued to reside therein.